Joseph T. RANDOLPH and Antoinette M. Randolph, Appellants,

v.

FRANKLIN INVESTMENT CO., INC., Appellee.

No. 8392.

District of Columbia Court of Appeals.

Argued May 8, 1975.

Decided Jan. 27, 1977.

---

Robert B. Cornell, Washington, D.C., for appellants.

Bernard D. Lipton, Silver Spring, Md., for appellee.

Before KELLY and HARRIS, Associate Judges, and REILLY, Chief Judge, Retired.

REILLY, Chief Judge, Retired:

This is an appeal by purchasers of an automobile from a judgment entered against them in an action by a finance company, which had repossessed the car, resold it, and sued to recover $1,128.00, the difference between the proceeds of the resale and the asserted balance owed by appellants under the terms of a conditional sales contract. The trial court, sitting without a jury, awarded damages in the amount of $750.00 to the plaintiff, the assignee of such contract.

The record shows that on November 15, 1968, appellants entered into a conditional sales agreement with G. B. Enterprises, t/a Lee Ford, for the purchase of a 1965 Pontiac. After a downpayment, a balance of $1,445.00 remained, to which sum insurance and finance charges were added, leaving a total obligation of $2,073.-84. Payments were to be made in fifty-one (51) biweekly installments of $39.88. The dealer assigned the contract to appellee Franklin Investment Company (Franklin) in consideration for the "cash" balance of $1,445.00.

During the first nine months of the contract, appellants were frequently a few days late in making payments on the dates the particular installments were due. Nevertheless, the payments were always accepted. The finance company had a general policy of mailing reminders to clients whenever payments were overdue, but appellants fell further and further behind. By August 19, 1969, appellants had missed two full payments. On that date they submitted a payment which was actually due on July 26, 1969. After none of the scheduled payments due in August were forthcoming, the company repossessed the car in early September.

After an advertised public sale at which no bids were submitted, the car was sold at a private sale in January 1970, for $125.00. In the action for a deficiency judgment, the trial court, having heard testimony as to the condition of the car immediately prior to repossession, offset $378.00 against the claimed amount, thus limiting recovery to $750.00.

■ Appellants urge several different grounds for reversal, two of which present important issues of statutory construction not previously resolved in this jurisdiction. One such contention is that the conditional sales agreement and the accompanying promissory note upon which plaintiff sued were usurious, as contemplating a rate of interest in excess of 8% per year, the maximum permissible at the time of the transaction. D.C.Code 1973, § 28–3301. It is well established in this jurisdiction that a sale of an article on credit at a figure that exceeds cash price by more than the legal rate of interest does not constitute usury because a vendor may fix one price for cash and another for credit. *Morris v. Capitol Furniture & Appliance Co., Inc.,* D.C.App., 280 A.2d 775 (1971). Appellant points out, however, that this principle— popularly known as the time-price rule— has no application to lending companies purchasing the instrument from the merchant for the actual cash price when they are privy to the terms of the original transaction, which seems to be the situation here. *Lee v. Household Finance Corporation,* D.C.App., 263 A.2d 635 (1970). This doctrine was held to bar recovery of unpaid interest by the assignee of a note executed in connection with the conditional sale of an automobile on the ground that the assignee, not being a holder in due course, could not invoke the time-price rule. *Beatty v. Franklin Investment Co.,* 115 U.S.App.D.C. 311, 319 F.2d 712 (1963).

The *Beatty* case, however, dealt with a sale which occurred in 1959. The following year Congress enacted a law regulating installment sales of automobiles, now incorporated in D.C.Code 1973 as Chapter 9 of Title 40, which contains, *inter alia,* a schedule of maximum finance charges that permit rates in excess of 8% per year on certain categories of motor vehicles. Inso-

far as relevant, § 40–902, authorizing such charges, provides:

(a) Notwithstanding the provisions of any instrument of security, refinancing contract, or other instrument to the contrary, made or entered into on or after the effective date of this chapter, no person shall charge, contract for, receive, or collect a finance charge if such charge exceeds the larger of $25 or an amount determined under the following schedule:

\* \* \* \* \* \*

Class 3. Any used motor vehicle not in Class 2, and, if a domestic motor vehicle, designated by the manufacturer by a year model not more than four years prior to the year in which the sale is made, and, if a foreign motor vehicle, not more than four years old—$14 per $100 per year.

▪ As the record shows that the second-hand Pontiac bought by appellants was within the Class 3 category, it is our opinion that the 14% annual rate on the unpaid balance of the loan—which is what the finance charge amounted to—was proper, notwithstanding appellants' position that this subsection is applicable only when action is brought by the original payee of the note (the car dealer) or a holder in due course. Their argument is that because the term "retail installment contract" is defined in § 40–901(9) as a contract entered into by a "seller" under which a security interest in the vehicle is retained to secure the buyer's obligation, only the seller may make finance charges in accordance with the schedule set out in § 40–902. We cannot accept such a narrow view of the statute, for § 40–902(a), previously quoted, is not limited to the words of art in the preceding section. Moreover, § 40–902(d) gives the District Council authority to modify the statutory schedule of maximum charges to afford a "fair return on investment to persons engaged in the business of financing retail installment transactions" and subsection (e)(1), authorizing further regulations, specifically refers in one paragraph to "a seller . . . or his *assignee*" (italics supplied). Hence the wording of the act itself shows that finance companies complying with it are outside the rule of the *Beatty* case, *supra,* with respect to installment loans on motor vehicle sales.

▪ Appellants also assail as invalid the regulations issued under this chapter of Title 40 insofar as these purport to authorize claims for deficiency judgments on the resale of repossessed vehicles.[1] Their point is that to such degree as the regulations conflict with the Consumer Credit Protection Act of 1971, these have been superseded. Specifically, they contend that one subparagraph of a section of this act, D.C. Code 1973, § 28–3812, entitled "Limitation on Creditors' Remedies", precluded the trial court from entering a deficiency judgment[2] because the cash price quoted by the dealer when applicants bought the car was less than $2,000. This would be true if conditional sales of motor vehicles were covered by the 1971 Act but one provision of that Act exempts (at least some) motor vehicle sales, *viz.,* the opening subsection of the same section relied upon by appellants, § 28–3812(a):

(a) This section applies to actions or other proceedings to enforce rights arising from consumer credit sales, consumer leases, and direct installment loans (other than a loan directly secured on

---

1. *See* 5AA D.C.R.R. 5.1 ff.

2. D.C.Code 1973, § 28–3812(e)(3), reads:
 (3) If the creditor repossesses or voluntarily accepts surrender of goods which were the subject of the sale and in which he has a security interest, the consumer is not personally liable to the creditor for the un-

paid balance of debt arising from the sale of a commercial unit of goods of which the cash price was $2,000 or less. In that case the creditor is not obligated to resell the collateral unless the consumer has paid 60 percent or more of the cash price and has not signed after default a statement renouncing his rights in the collateral.

real estate or a direct motor vehicle installment loan covered by chapter 36 of title 28, District of Columbia Code); and, in addition, to extortionate extensions of credit.

According to appellants, this language does not exclude the sales contract to which they were parties because it was not financed by a banking institution, as the only reference to "motor vehicle installment loans" in chapter 36 of title 28 is contained is the following section of the Code:

§ 28–3601. *Direct motor vehicle install-ment loans*

The provisions of the Act approved April 22, 1960 (Public Law 86–431, 74 Stat. 69; D.C.Code, 1967 ed., chapter 9 of title 40), covering installment sales of motor vehicles, as amended, and the regulations issued thereunder, shall apply to the extent appropriate to, a direct installment loan, secured by a security interest in a motor vehicle, made by a federally insured bank or savings and loan association doing business in the District of Columbia, subject to section 28–3602. (Added Dec. 17, 1971, Pub.L. 92–200, § 4, 85 Stat. 666.)

Hence appellants' reading of the statute has some basis in the text. To accept it, however, would produce one incongruous result. Section 3812 not only limits the right of a creditor to bring a deficiency suit against an installment purchaser but also bars repossession of the article purchased by the defaulting debtor without judicial process, unless such debtor consents. This would mean that only a very limited class of creditors on conditional automobile sales contracts, *viz.,* banks and savings and loan associations, would be entitled to enforce them by repossession and deficiency suits. There is nothing in the legislative history of the Consumer Credit Act of 1971 which indicates that Congress intended to put banks in such a favored position to the prejudice of dealers, finance companies, and credit unions, in making installment loans to purchasers of motor vehicles, or that it meant in any way to repeal or modify the provisions of the Motor Vehicle Installment Sales Act (Chapter 9 of Title 40, *supra*), or the regulations issued thereunder which place all installment loans on motor vehicles on an equal footing. Such considerations have led the Corporation Counsel[3] in a formal opinion to the District government to conclude that the Consumer Credit Act has no application to transactions within the scope of such chapter.[4]

The opinion also points out that as the 1971 Act was intended to stimulate rather than discourage local banks to lend money on installment sales, § 28–3601 was explained in the House and Senate reports as an extension of such chapter (the 1960 act on automobile loans) to District banks and savings and loan associations. The courts of this jurisdiction have recognized that rulings of the Corporation Counsel "are entitled to weight as construction of the District of Columbia code unless plainly unreasonable or contrary to ascertainable legislative intent." *Williams v. W. M. A. Transit Company,* 153 U.S.App.D.C. 183, 189, 472 F.2d 1258, 1264 (1972). As this particular opinion is well reasoned and supported by the text of the Congressional reports, we concur in its interpretation of the statutory language at issue here, and hold that the trial court did not err in granting a deficiency judgment.

 It is our opinion, however, that in one respect plaintiff failed to comply with the regulations[5] relating to sales of repossessed cars which require a succession of notices. Contrary to appellants' views, we are satisfied that the creditor did satisfy the first notice requirement respecting

3. Opinion of the Corporation Counsel to the Director of the Department of Economic Development, dated February 9, 1973.

4. Section 40–901 to –910 incl., *supra.*

5. 5AA D.C.R.R. 5.2 and 5.3.

the proposed public resale, as it posted such notice by certified mail to the address of the purchasers. While this notice was returned unclaimed by the postoffice, the applicable regulation does not call for proof of receipt. Moreover, appellants had actual knowledge of the fact that their car had been repossessed. When no bidders appeared at the public auction the creditor was under a duty by reason of Section 5.3 of the regulations and D.C.Code 1973, § 28:9–504(3) to send another notice before it disposed of the car at a private sale. The purpose of these provisions is to afford the original purchaser an opportunity to protect the full value of its collateral. But despite the failure of the creditor to send the second notice, we do not deem appellants aggrieved by the final judgment, for the court, after hearing testimony on the fair market value of the car, determined that the amount realized at the private sale was inadequate. Accordingly, the court itself made a finding on reasonable value—which is supported by the evidence —and offset the excess of this amount— some $378.00—over the sum paid at the private sale against the balance of the claimed indebtedness. Thus, appellants' proprietary rights were safeguarded.

 Appellants' other assignments of error may be disposed of without extended discussion. We perceive no error in the denial of appellants' motion for leave to amend their answer by filing a counterclaim. The answer originally filed, despite Rule 13,[6] mentioned no counterclaim and the case had been pending for almost a year before being scheduled for trial. It was only on the eve of the trial—some weeks after notice of the setting of the trial date—that the counterclaim motion was filed. Under Rule 13(f) a counterclaim may be received if previously omitted "through oversight, inadvertence, or excusable neglect", but as appellants have made no showing that would bring the motion within these provisions, we shall not

disturb the calendar judge's exercise of discretion.

We are also not persuaded that the trial court erred in not finding that by prior acceptance of tardy installment payments the creditor waived or was estopped from asserting its contract remedies when appellants failed to make the payments due in August. When the car was finally repossessed in September, the payments were more than one month in default. It would have been unreasonable to infer from the creditor's patience on earlier occasions a waiver of all its remedies with respect to a subsequent default of such unprecedented duration.

We have examined appellants other objections to the judgment in light of the record and find no merit in them.

*Affirmed.*

KELLY, J., concurs in the result.