Joseph T. RANDOLPH and Antoinette
M. Randolph, Appellants,

v.

FRANKLIN INVESTMENT CO.,
INC., Appellee.

No. 8392.

District of Columbia Court of Appeals.

Argued En Banc March 2, 1978.

Decided Jan. 29, 1979.

Roger K. Davis, with whom Gerald W. Von Korff and Robert B. Cornell, Washington, D. C., were on the brief, for appellants.

Bernard D. Lipton, Silver Spring, Md., with whom Charles R. Donnenfeld, Cameron M. Blake, and Howard B. Possick, Washington, D. C., were on the brief, for appellee.

Donald P. Rothschild, appointed by this court as amicus curiae, with whom Robinwyn D. Lewis, Washington, D. C., was on the brief.

Before NEWMAN, Chief Judge, KELLY, KERN, GALLAGHER, NEBEKER, YEAGLEY, HARRIS, MACK and FERREN, Associate Judges, and REILLY, Chief Judge, Retired.

FERREN, Associate Judge:

On January 27, 1977, a division of this court affirmed a $750 deficiency judgment against appellants, Joseph and Antoinette Randolph. 368 A.2d 1151. The appellee finance company, Franklin Investment Co., Inc. (Franklin), had repossessed their automobile, resold it, and then sued to recover the difference between the proceeds of the sale and the balance due on the Randolphs' note. We vacated the division's opinion and granted the petition for rehearing en banc because of the "exceptional importance," D.C.App.R. 40, of resolving certain issues inherent in automobile financing transactions under District of Columbia law. We conclude that the decision of the trial court must be reversed and the deficiency judgment disallowed because Franklin resold the auto without the requisite notice to the Randolphs. We further conclude that the case must be remanded to the trial court for entry of an order granting the Randolphs leave to file their counterclaim, which the motions judge had declined to permit.

I.

On November 15, 1968, the Randolphs entered into a contract with G. B. Enterprises, t/a Lee Ford, for the purchase of a 1965 Pontiac. After making a $300 cash downpayment, appellants owed a balance of $1,445 to which an insurance charge of $175.32 and a finance charge of $453.52 were added, leaving a total time-price balance of $2,073.84. The contract called for payment of 51 biweekly installments of $39.88, commencing November 30. On the date the contract was signed, Lee Ford assigned it and the accompanying promissory note, without recourse, to Franklin for $1,445 in cash.

During the first nine months of the contract, appellants were consistently late in making payments. Joseph Randolph testified that his paydays fell on different dates, and that when he had to be late with a payment he would call Franklin to explain that he had not been paid at work. Franklin admitted to accepting 17 consecutive late payments beginning with the first on December 3. Franklin assessed delinquency charges for twelve of these payments. On August 19, 1969, appellants submitted a payment which, under the original contract

schedule, had fallen due on July 26. After receiving neither of the August payments nor the one falling due on the first Saturday of September, Franklin arranged for repossession of the car sometime between Monday, September 8, and Wednesday, September 10.

After an advertised public sale on September 26 at which no bids were submitted, the car was sold as scrap for $125 some four months later at a private sale in January 1970. There is a dispute as to whether the Randolphs had been notified about the public sale, but Franklin concedes that the Randolphs did not receive notice of the second, private sale.

In Franklin's action for a deficiency judgment, the trial court took evidence on the value of the automobile at the time of resale. The Randolphs testified that prior to repossession, the automobile was in excellent working condition. One of Franklin's vice-presidents then testified that he had not seen the car between its repossession and resale, but that the wholesale value of a 1965 Pontiac like the Randolphs' would have been between $375 and $800 at the time of the January 1970 resale. On the basis of this evidence, the trial court implicitly valued the Pontiac at $503, for it offset $378 against the claimed deficiency of $1,128 (net of the $125 sale proceeds) and awarded Franklin a judgment of $750.

## II.

Appellants urge several grounds for reversal based on statutes claimed applicable to automobile financing and remedies in the District of Columbia: the law applicable to usury, D.C.Code 1973, §§ 28–3301 et seq.; the Motor Vehicle Financing Act of 1960, D.C.Code 1973, §§ 40–901 et seq.; the District of Columbia Consumer Credit Protection Act of 1971, D.C.Code 1973, §§ 28–3801 et seq.; and the Uniform Commercial Code, D.C.Code 1973, §§ 28:1–101 et seq. In addition, they seek leave to file a counterclaim, which the motions judge denied. The division of this court accordingly addressed three principal questions: (1) whether the automobile contract and promissory note assigned to Franklin were usurious; (2) whether the Consumer Credit Protection Act of 1971, supra, § 28–3812(e)(3), supersedes the regulations issued under the Motor Vehicle Financing Act, supra, see 5AA DCRR §§ 5.1 et seq., so as to preclude deficiency judgments altogether after resale of repossessed vehicles originally sold to the defaulting purchaser for $2,000 or less; and (3) whether, in any event, Franklin's alleged failure to comply with regulations requiring notice to the debtor of the proposed public and private sales, see 5AA DCRR §§ 5.2 and 5.3, precluded the deficiency judgment awarded by the trial court.[1]

In order to resolve the deficiency judgment issue, we need only answer the third question.[2] Franklin concedes that it did not notify the Randolphs of the proposed private sale. We conclude, contrary to the division's opinion, see 368 A.2d at 1155–56, that Franklin's failure to give the required notice of the private sale was not cured—and legally could not be cured—by the trial court's determination of the reasonable value of the car (for which the Randolphs were given credit) at the time of

1. The division also considered—and rejected—the Randolphs' arguments that (1) Franklin, by accepting late payments and other conduct, had modified the contract and thus waived, or was estopped from asserting, its right to repossess and resell the auto, and that (2) the motions judge erroneously denied leave to file a counterclaim. See Part III, infra. In addition, the Randolphs argue that Franklin violated the Uniform Commercial Code by failing to repossess and dispose of the auto in a commercially reasonable manner—an issue the division did not, and we need not, address.

2. Although we need not consider the Randolphs' usury argument in connection with our evaluation of Franklin's right to a deficiency judgment, we should do so because of our conclusion, see Part III, infra, that the Randolphs are entitled to an order granting leave to file their counterclaim (which includes a count seeking recovery of payments to Franklin). Accordingly, we reach the issue in Part III.C., infra, and hold that the transaction did not violate the usury laws, for the reasons stated in the division opinion. See 368 A.2d at 1153–54.

the sale. Assuming, without deciding, that a creditor may pursue a deficiency judgment in this situation—contrary to the Randolphs' contention[3]—we hold that by failing to give the required notice or the private sale, the creditor, Franklin, is not entitled to a deficiency judgment; its recovery is limited to the proceeds of the private sale.[4]

A. A creditor's obligation to give the debtor notice of repossession and resale of collateral, as well as its responsibility to carry out this remedy in a prescribed fashion, is governed by the Uniform Commercial Code (UCC), D.C.Code 1973, §§ 28:9–101 *et seq.* and by the regulations promulgated by the District of Columbia Council pursuant to the Motor Vehicle Financing Act, D.C.Code 1973, § 40–902(e)(1).[5] The UCC provides that following repossession, a secured party electing to dispose of the collateral must do so in a "commercially reasonable" manner, having sent the debtor reasonable advance notice of sale:

> . . . [E]very aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor . . . [D.C.Code 1973, § 28:9–504(3).][6]

The notice requirement is elaborated in Title 5AA of the District of Columbia Rules

**3.** The Randolphs contend that the Consumer Credit Protection Act of 1971, D.C.Code 1973, § 28–3812(e)(3) applies:

> If the creditor repossesses or voluntarily accepts surrender of goods which were the subject of the sale and in which he has a security interest, the consumer is not personally liable to the creditor for the unpaid balance of debt arising from the sale of a commercial unit of goods of which the cash price was $2,000 or less. In that case the creditor is not obligated to resell the collateral unless the consumer has paid 60 percent or more of the cash price and has not signed after default a statement renouncing his rights in the collateral.

**4.** This limitation on recovery of a deficiency does not affect the creditor's obligation to account to the debtor for any surplus. *See* D.C.Code 1973, § 28:9–504(2). Nor does the limitation immunize the creditor from an available damage action by the debtor. *See* D.C. Code 1973, § 28:9–507(1) discussed in Part III, *infra.*

**5.** The UCC, D.C.Code 1973, § 28:9–203(2), provides in part:

> A transaction, although subject to this article, is also subject to . . . chapter 9 of Title 40, relating to installment sales of motor vehicles, and in the case of conflict between the provisions of this article and . . . such statute, the provisions of such statute control. Failure to comply with any applicable statute has only the effect which is specified therein.
>
> The Title 40 referred to, D.C.Code 1973, § 40–902(e)(1), provides in part:

> The Council is hereby authorized to make, and the Commissioner is authorized to enforce, such regulations as the Council in its discretion deems appropriate to carry out the purposes of this section and to prevent unconscionable practices in connection with retail installment transactions, including, without limitation, provisions:
>
> \*   \*   \*   \*   \*   \*
>
> (vi) respecting the manner and methods of the sale or disposition of repossessed motor vehicles under such conditions, including, without limitation, rights of redemption, as the Council deems advisable; . . .

Title 5AA of the District of Columbia Rules and Regulations, quoted below in the text, was adopted pursuant to § 40–902(e)(1). No party has suggested any inconsistency between Title 5AA and the UCC, *see* § 28:9–203(2), which would preclude our application of the UCC to this case.

**6.** "The purpose of this notice, without doubt, is to enable the debtor to protect his interest in the property by paying the debt, finding a buyer or being present at the sale to bid on the property or have others do so, to the end that it be not sacrificed by a sale at less than its true value." *Mallicoat v. Volunteer Finance & Loan Corp.*, 57 Tenn.App. 106, 415 S.W.2d 347, 350 (1966). Even where the debtor is not in a position to redeem the property, his presence at the sale, coupled with his self-interest in minimizing his liability for a deficiency, helps insure that "every aspect of the disposition . . . [is] com.nercially reasonable." D.C. Code 1973, § 28:9–504(3). *See generally* J. White & R. Summers, Uniform Commercial Code § 26–9 at 982 (1972).

and Regulations. Section 5.2 sets forth the manner of informing the debtor ("buyer") that the repossession has taken place and of the right to redeem:

(a) Within five days after any motor vehicle is repossessed, the holder shall deliver to the buyer personally, or send him by registered or certified mail to his last known address, a written notice stating (1) the buyer's right to redeem and the amount due and payable, (2) the buyer's rights as to a resale and his liability for a deficiency, and (3) the exact address where the motor vehicle is stored and the exact address where any payment is to be made or notice delivered. [5AA DCRR § 5.2.]

Section 5.3 requires the secured party ("holder") to provide certain details of any contemplated sale or auction of the collateral:

The holder shall, at least 10 days prior to the date of any such public sale or auction, give written notice to the buyer of the time and place of such sale or auction, which notice shall be delivered personally or sent by registered or certified mail, or, in the case of a private sale, 10 days notice of the time after which such private sale may be held. [5AA DCRR § 5.3.]

The rules of court incorporate these creditor responsibilities. Super.Ct.Civ.R. 55–II(b) bars recovery of a deficiency judgment after repossession of personal property unless the plaintiff-creditor has "complied with applicable law" and the property has been "resold for a fair and reasonable price."[7] We have to determine, therefore, how literal the creditor's compliance must be with the applicable statutes and regulations, in order to permit a deficiency judgment in Superior Court.

■ B. In proceeding to the merits, we need not consider the Randolphs' argument that Franklin failed to comply with the requirements for notification about repossession and the scheduled public sale. Franklin concedes that it neglected to notify the Randolphs of the second, private sale. Under our analysis, the legal consequence of this failure is no less than the consequence of failing to give the earlier required notices. Because Rule 55–II(b) denies the trial court authority to grant a deficiency judgment unless the plaintiff-creditor has "complied with applicable law," and because, as elaborated below, we conclude that the UCC and Title 5AA regulations preclude a deficiency judgment when proper notice of a public or private sale has not been given, we find no legal basis for the court to award a deficiency judgment when only the second requirement of the rule, resale at "a fair and reasonable price," is met.

Franklin argues, to the contrary, that the object of Rule 55–II(b) and of the notice requirements of the UCC and Title 5AA regulations is to insure that debtors whose property is repossessed are credited with no less than the fair market value of this collateral in any subsequent action for a deficiency judgment. It follows, according to Franklin, that the trial court fully accomplished the purpose of the UCC, the Title 5AA regulations, and, as a result, Rule 55–II(b) by finding the fair market value of the 1965 Pontiac, crediting the Randolphs with it, and thus properly limiting the deficiency judgment.[8] In Franklin's view,

---

7. Super.Ct.Civ.R. 55–II(b) provides as follows: No deficiency judgment after repossession of personal property shall be granted unless it shall appear to the satisfaction of the court by proper evidence that said plaintiff complied with applicable law and that said property was resold for a fair and reasonable price.
   The Advisory Committee Comment attached to Rule 55 provides in part as follows:
   Rule 55–II. For purposes of section (b) of this rule, applicable law as to District of Columbia transactions include D.C. Code

(1967 edition) § 28:9–504 and Commissioners' Order No. 60–2219 (dated October 20, 1960) [promulgating the Title 5AA regulations].
   Although Rule 55 is entitled "Default," we find no evidence for the proposition that Rule 55–II(b) was intended to apply only to *ex parte* actions.

8. Before awarding Franklin a $750 deficiency judgment and thereby implicitly attaching a $503 value to the repossessed automobile, the

therefore, the trial court rendered any breach of the notice requirements harmless—and thus immunized its decision from reversal. *See* Super.Ct.Civ.R. 61.[9]

Franklin's argument is unpersuasive. There are solid reasons why failure to give notice can never (in the absence of actual notice) be deemed harmless. In the first place, the UCC, § 28:9–506, and the regulations, 5AA DCRR § 5.2(b) and (c), guarantee a debtor the right to redeem the collateral at any time before the secured party has arranged for its disposition, provided that the debtor tender the balance due plus the expenses of retaking the property. Without appropriate notice of the date on or after which the creditor has scheduled sale of the property, the debtor will not have a clear idea of the time he has available to make the arrangements necessary for redemption. Moreover, unless the debtor has knowledge of the location where the property is stored, *see* 5AA DCRR § 5.2(a)(3), his redemption efforts may be hampered. The debtor, for example, may attempt to refinance the property by borrowing from friends, if not a financial institution. Such third parties may demand their own security interest in the property and may therefore desire to inspect it before committing themselves to any arrangement.

Second, even when redemption is not a realistic possibility, the debtor still has an important interest in knowing when and where the disposition of the collateral is to take place. Although the UCC requires a creditor to dispose of the collateral in a "commercially reasonable" fashion, § 28:9–504(3), and Rule 55–II(b) requires the creditor to demonstrate that a "fair and reasonable price" was received for the property, it is likely—as a practical matter—that the debtor, absent notice of the time and place of sale, will be severely disadvantaged in defending against the deficiency action. Simply put, he will be hard pressed to produce evidence, even if available, to rebut the contention that the creditor disposed of the property at a reasonable price.

It is true, of course, that under the UCC and District regulations, in the event of a private sale—as eventually occurred in the present case—the creditor is only required to notify the debtor 10 days in advance "of the time after which such private sale may be held." 5AA DCRR § 5.3; *see* D.C.Code 1973, § 28:9–504(3). It follows, therefore, that absent a requirement of notice of the exact time and place of sale (in contrast with the notice required for a public sale or auction), notice of the time left prior to private sale is especially significant, for the debtor's option at that point is virtually limited to redemption; *i. e.*, unless the vehicle has remained until time of sale at "the exact address where the motor vehicle is stored" upon repossession, 5AA DCRR

---

trial judge noted "the lack of any concrete evidence as to the condition of the car" when it ultimately was resold:

> Neither of the witness for the plaintiff has testified that they recalled seeing the car itself. The first witness, Mr. Harrison, I believe said that he hasn't seen it; and Mr. Hershman said he had no recollection of seeing it, and his testimony was based on the fact that several other cars were included in a sale to the junkman, at the time the defendant's car was sold to the junkman. The defendant has testified the car was in good condition.
>
> .     .     .     .     .
>
> .   .   . I have no testimony as to the actual condition of the car except that it was sold as junk so far as the plaintiff is concerned.

In fact, aside from Mr. Randolph's statement that the car was in good condition when he last possessed it, the only evidence of value came from a Franklin employee, who was permitted to testify that an average 1965 Pontiac Star Chief was worth $375 to $800. While this evidence was admissible to show the value of an auto of this type in average condition, query whether it was sufficient to demonstrate the value of the particular auto repossessed from the Randolphs?

9.  In the case of repossessed property sold privately, this view of Rule 55–II(b) would make that rule no more than a means of implementing 5AA DCRR § 5.5, which provides:

> In the case of a private sale of a repossessed motor vehicle, the proceeds of such sale shall be deemed to be the larger of either the amount actually received as the consideration for such sale or the fair market value of the motor vehicle in its then condition as of the date of such private sale.

§ 5.2(a)(3), and the debtor has been able to watch over it until the sale takes place, the opportunity to monitor the private sale is not likely to be available. *See generally* J. White & R. Summers, Uniform Commercial Code § 26–11 at 991–95 (1972).

It is no answer to say that the UCC's requirement of "commercial reasonableness," enforcible by the courts, will assure that the debtor receives credit for the full value of the collateral upon resale, as the questionable quality of evidence at the trial of this case attests. *See* note 8, *supra.* Given the availability of a deficiency judgment, as well as the requirement that the debtor receive any surplus upon resale, a secured creditor does not necessarily have an incentive to achieve the highest possible resale price (unless, perhaps, he knows the debtor is judgment proof). But even more to the point, when the creditor and his prospective purchaser are not dealing at arms length—*e. g.*, they are jointly owned or otherwise repeatedly deal with one another—there may even be perverse incentives for the creditor to minimize the price he receives in disposing of the collateral, in order that his affiliate can maximize the profit on a subsequent sale back to the public while the repossessor is made whole by the deficiency judgment. Studies have shown that this practice has been common in the District of Columbia. *See* Firmin & Simpson, *Business as Usual: An Empirical Study of Automobile Deficiency Judgment Suits in the District of Columbia*, 3 Conn.L. Rev. 511, 517 (1971).[10]

We cannot say from this record that such disincentives were at work here affecting Franklin. However, the rule of law governing the legal consequences to a secured creditor for failure to give the requisite notice of resale must be uniform for all creditors, based on the range of commercial practices realistically to be anticipated. Moreover, the rule, while being fair to the creditor, ideally should help induce commercially reasonable conduct without need for a debtor's reliance on the courts.

It is interesting to note, in this connection, that Rule 55–II(b) reflects a change from its predecessor, Mun.Ct.Civ.R. 70(a), which provided:

> No deficiency judgment after repossession of personal property shall be granted unless it shall appear to the satisfaction of the court by proper evidence that said property was resold for a fair and reasonable price.

Rule 70(a) was designed "to assure a defaulting purchaser credit for the fair and reasonable price of the article repossessed." *Universal C.I.T. Credit Corp. v. Shook*, D.C. Mun.App., 150 A.2d 635, 636 (1959). Although the rule did require the conditional vendor to come forward with competent, *ex parte* evidence of the property's fair and reasonable value, *see Besner v. Smith*, D.C. Mun.App., 178 A.2d 924, 926–27 (1962), it did not operate as a bar to a deficiency action after a wrongful repossession, *see United Securities Corp. v. Franklin*, D.C. Mun.App., 180 A.2d 505 (1962). When,

---

**10.** In cases where the auto dealer transfers the debtor's note to the finance company without recourse, it apparently was common in the District of Columbia not many years ago for the finance company to resell the repossessed automobile to the original dealer at a price well below the market value quoted by the National Automobile Dealers' Association, thereby facilitating an unnecessarily high deficiency claim and an inflated profit on the second resale. *See* Firmin & Simpson, *supra* at 517–19. In other instances, the auto dealer may transfer the debtor's note to the finance company with recourse, resulting, upon default, in the dealer's accepting reassignment of the note. *See* Corenswet, *I Can Get It For You Wholesale: The Lingering Problem of Automobile Deficiency Judgments*, 27 Stan.L.Rev. 1081, 1081–82 (1975) (Alameda County, California Study); Comment, *Remedies for Failure to Notify Debtor of Disposition of Repossessed Collateral Under the U.C.C.*, 44 U.Colo.L.Rev. 221, 225 (1972) ("Colo."). In that case, the dealer itself undertakes repossession and suit for a deficiency judgment after resale—again, not uncommonly resulting in a price below market value. *See* Corenswet, *supra* at 1081–82. *See generally* Hersbergen, *The Improvident Extension of Credit as an Unconscionable Contract*, 23 Drake L.Rev. 225, 256–59 (1974) (Des Moines, Iowa Study); White, *Representing the Low Income Consumer in Repossessions, Resales, and Deficiency Judgment Cases*, 64 Nw.U.L.Rev. 808 (1970); Shuchman, *Profit on Default: An Archival Study of Automobile Repossession and Resale*, 22 Stan.L.Rev. 20, 26–28 (1969).

however, the rules of the trial court were revised coincident with implementation of the Court Reform and Criminal Procedure Act of 1970, Pub.L.No.91–358, 84 Stat. 473 (1970), Rule 70(a) was redrafted as Rule 55–II(b) to recognize explicitly the adoption by Congress and the District of Columbia Council of standards governing the repossession and resale of property subject to a security agreement. While the Rule 70(a) requirement that evidence demonstrating the fairness and reasonableness of the resale price was retained, Rule 55–II(b) was drafted to require, additionally, a demonstration of compliance with "applicable law," specifically D.C.Code 1973, "§ 28:9–504 and Commissioners' Order 60–2219" [the Title 5AA regulations]. *See* note 7, *supra.*

This is not to say that the Rule 55–II(b) reference to "applicable law" adds substantive content. It is to say, rather, that the drafters of the rule recognized the possibility that the UCC, District regulations, and perhaps other laws may impose prerequisites to a deficiency judgment in addition to requiring credit for a "fair and reasonable price" for the collateral.

In our review of the case law from other jurisdictions we have found two sharply contrasting lines of authority. The first establishes a rule requiring strict compliance with the UCC. A creditor who fails to comply with the statutory requirements for notice of resale is not entitled to a deficiency judgment. *See* G. Gilmore, 2 Secured Interests in Personal Property, 44.9.4 at 1264 (1965).[11] Because of the substantial prejudice to debtors in the absence of notice of resale, especially when compared to the ease with which any creditor can comply with the notice requirements, we adopt this strict rule. The second line of authority was followed by the trial judge and the division of this court. It would permit a creditor to obtain a deficiency judgment, despite failure to comply with notice requirements, if the creditor carries the burden of demonstrating that, irrespective of the actual proceeds on resale, "the fair and reasonable value of the security [was] credited to the debtor's account." *Conti Causeway Ford v. Jarossy,* 114 N.J.Super. 382, 276 A.2d 402, 404–05 (1971), *aff'd,* 118 N.J. Super. 521, 288 A.2d 872 (1972).[12] We re-

11. UCC cases precluding recovery of deficiency judgments after failure to comply with the notice requirements before resale include: *In re Carter,* 511 F.2d 1203, 1205 (9th Cir. 1975) (applying Cal. law); *Skeels v. Universal C.I.T. Credit Corp.,* 222 F.Supp. 696, 702 (W.D.Pa. 1963) (applying Pa. law), *vacated on other grounds,* 335 F.2d 846 (3d Cir. 1964); *Atlas Thrift Co. v. Horan,* 27 Cal.App.3d 999, 104 Cal.Rptr. 315 (1972); *Barnett v. Barnett Bank of Jacksonville,* 345 So.2d 804, 806 (Fla.App. 1977); *Washington v. First National Bank of Miami,* 332 So.2d 644, 645 (Fla.App.1976); *Hepworth v. Orlando Bank & Trust Co.,* 323 So.2d 41, 42 (Fla.App.1975); *Turk v. St. Petersburg Bank & Trust Co.,* 281 So.2d 534, 536 (Fla.App.1973); *Gurwitch v. Luxurest Furniture Mfg. Co.,* 233 Ga. 934, 214 S.E.2d 373, 374 (1975); *Edmondson v. Air Service Co.,* 123 Ga. App. 263, 180 S.E.2d 589, 590 (1971); *Braswell v. American Nat'l. Bank,* 117 Ga.App. 699, 161 S.E.2d 420, 422 (1968); *Herman Ford-Mercury Inc. v. Betts,* 251 N.W.2d 492, 496 (Iowa 1977); *Federal Deposit Ins. Corp. v. Farrar,* 231 N.W.2d 602, 605 (Iowa 1975); *Twin Bridges Truck City, Inc. v. Halling,* 205 N.W.2d 736, 739 (Iowa 1973); *Camden Nat'l. Bank v. St. Clair,* 309 A.2d 329, 332 (Me.1973); *One Twenty Credit Union v. Darcy,* 40 Mass.App.Dec. 64 (1968); *DeLay First Nat'l. Bank & Trust Co. v.*

*Jacobson Appliance Co.,* 196 Neb. 398, 243 N.W.2d 745, 751 (1976); *Bank of Gering v. Glover,* 192 Neb. 575, 223 N.W.2d 56, 59 (1974); *Avis Rent A Car System, Inc. v. Franklin,* 82 Misc.2d 66, 366 N.Y.S.2d 83, 85 (1975); *Leasco Data Processing Equipment Corp. v. Atlas Shirt Co., Inc.,* 66 Misc.2d 1089, 323 N.Y.S.2d 13 (1971); *Aimonetto v. Keepes,* 501 P.2d 1017, 1019 (Wyo.1972).

12. UCC cases permitting deficiency judgments, absent compliance with notice requirements provided the fair value of the collateral (irrespective of the proceeds upon resale) is credited to the debtor, include: *United States v. Whitehouse Plastics,* 501 F.2d 692, 695 (5th Cir.), *cert. denied,* 421 U.S. 912, 95 S.Ct. 1566, 43 L.Ed.2d 7 (1975) (applying Texas law); *Leasing Associates, Inc. v. Slaughter & Son, Inc.,* 450 F.2d 174, 177 (8th Cir. 1971) (applying Arkansas law); *Weaver v. O'Meara Motor Co.,* 452 P.2d 87, 91–92 (Alaska 1969); *Universal C.I.T. Credit Co. v. Rone,* 248 Ark. 665, 453 S.W.2d 37 (1970); *Norton v. National Bank of Commerce,* 240 Ark. 143, 398 S.W.2d 538 (1966); *Community Management Ass'n. of Colorado Springs Inc. v. Tousley,* 32 Colo.App. 33, 505 P.2d 1314, 1316 (1973); *Savings Bank of New Britain v. Booze,* 34 Conn.Sup. 632, 382 A.2d 226, 228–29 (1977); *Hall v. Owen County*

ject this approach. The trial court's judgment granting Franklin a $750 deficiency judgment accordingly must be reversed.[13]

### III.

We turn, finally, to the motions judge's denial of the Randolphs' motion for leave to file a counterclaim. Approximately one month prior to trial—and two months after the trial date had been scheduled—the Randolphs sought leave to file an amended answer and a counterclaim.[14] The amended answer alleged defenses of usury, as well as violations of the regulations on repossession and resale and of Rule 55–II(b) on deficiency judgments. The proffered counterclaim virtually mirrored the amended answer; the Randolphs affirmatively sought return of all illegal payments, as well as damages for wrongful, willful, and malicious repossession and resale.

The motions judge granted leave to file the amended answer but not the counter-claim, expressing concern at the lateness of the attempt to seek affirmative relief. The division of this court, finding no showing that the Randolphs had omitted to file the counterclaim "through oversight, inadvertence, or excusable neglect," Super.Ct.Civ.R. 13(f), declined to disturb the motions judge's exercise of discretion. *See* 368 A.2d at 1156.

A. The trial court, it is true, does have substantial discretion to grant—or deny—late filing of a counterclaim. *See Runkle v. Nong Kimny*, 105 U.S.App.D.C. 285, 289, 266 F.2d 689, 693 (1959). On the other hand, the court's discretion must be "exercised consistent with accepted legal principles." *Pyramid Nat. Van Lines v. Goetze*, D.C.Mun.App., 66 A.2d 693, 695 (1949). Here, such discretion initially is limited by the fact that the Randolphs' proffered counterclaim was compulsory. *See* Super.Ct.Civ.R. 13(a).[15] We have held it to be

*State Bank*, 370 N.E.2d 918, 928 (Ind.App. 1977); *Abbott Motors, Inc. v. Ralston*, 28 Mass. App.Dec. 35 (1964); *Walker v. V. M. Box Motor Co.*, 325 So.2d 905, 906 (Miss.1976); *Cornett v. White Motor Corp.*, 190 Neb. 496, 209 N.W.2d 341 (1973); *Levers v. Rio King Land & Investment Co.*, 560 P.2d 917, 920 (Nev.1977); *T & W Ice Cream, Inc. v. Carriage Barn, Inc.*, 107 N.J.Super. 328, 258 A.2d 162 (1969); *Conti Causeway Ford v. Jarossy, supra; Clark Leasing Corp. v. White Sands Forest Products, Inc.*, 87 N.M. 451, 535 P.2d 1077, 1081–82 (1975); *Leasco Computer, Inc. v. Sheridan Industries, Inc.*, 82 Misc.2d 897, 371 N.Y.S.2d 531, 534–35 (1975); *Lincoln Rochester Trust Co. v. Howard*, 75 Misc.2d 181, 347 N.Y.S.2d 306, 308 (1973); *Mallicoat v. Volunteer Finance & Loan Corp., supra; Commercial Credit Corp. v. Wollgast*, 11 Wash.App. 117, 521 P.2d 1191, 1194–95 (1974); *Grant County Tractor Co., Inc. v. Nuss*, 6 Wash.App. 866, 496 P.2d 966 (1972). *See Corenswet, supra* note 10, at 1104–06; *Colo., supra* note 10, at 233–35.

Some of these cases express the view that because UCC § 9–507(1) provides a separate statutory remedy, the drafters did not contemplate violation of § 9–504(3) notice requirements as a complete bar to deficiency judgments. *See, e. g., United States v. Whitehouse Plastics, supra* at 695–96; *Grant County Tractor Co., Inc. v. Nuss, supra*. In a case covering "commercial dealings between reasonably experienced businessmen," the court in *United States v. Whitehouse Plastics, supra* at 696, stressed that a debtor whose repossessed collateral is sold without notice is entitled, in any event, to a minimum recovery under the § 9–507(1) formula. Under some circumstances, the court intimated, this debtor's remedy could make an absolute bar to a deficiency judgment inequitable. *Id.* at 696 n. 6.

**13.** The commentators are also divided. *Compare* Mancino, *Denial of Deficiency: A Problem of Reasonable Notice under UCC § 9–504(3)*, 34 Ohio St.L.J. 657 (1973) (supports barring deficiency judgments absent strict compliance with the notice provisions of 9–504(3)) *with* Rosner, *A Creditor's Right to a Deficiency Judgment under Article 9 of the Uniform Commercial Code: Effect of Lack of Notice*, 42 Brooklyn L.Rev. 56 (1975) (favors rule permitting creditor to recover deficiency, absent required notice, if creditor sustains burden of proving that the value of the collateral did not equal the outstanding obligation).

**14.** Super.Ct.Civ.R. 13(f) provides as follows:

OMITTED COUNTERCLAIM. When a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, he may by leave of court set up the counterclaim by amendment.

**15.** Subject to enumerated exceptions, Super.Ct. Civ.R. 13(a) requires that a "pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against an opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of

reversible error for a trial court, in an analogous situation, to deny leave to file a compulsory counterclaim while permitting the filing of a late answer. *Delaney v. Basiliko*, D.C.Mun.App., 208 A.2d 630, 632 (1965). We noted, more specifically, that

> appellant's counterclaim was compulsory and could not be separated from his answer. When the trial court waived its rules to allow the filing of a late answer to Basiliko's complaint, it could not deny leave to file the counterclaim which was an integral part of that pleading. [*Id.*]

*See Pyramid Nat. Van Lines v. Goetze, supra* at 695.

■ The approach of *Delaney v. Basiliko, supra* is particularly relevant here, for unlike some compulsory counterclaims, the Randolphs' claim for affirmative relief is based on the very facts necessary to establish their defenses. If, as the motions judge found, it was appropriate to permit the filing of additional defenses to an action for a deficiency judgment, we can perceive no record or otherwise rational basis for denying the defendant an opportunity to receive affirmative relief based on those defenses. As elaborated below, the exercise of discretion as to filing an amended answer and compulsory counterclaim, in this situation, is one decision.[16] In reaching this conclusion we have examined, first, the statutory scheme and then the record facts on which the exercise of discretion was based.

B. The interrelatedness of defensive and affirmative relief is evident in the context of a secured creditor's action for a deficiency judgment under UCC § 9–504(2) and the debtor's corresponding right to recover under § 9–507(1) for the secured party's failure to comply with the UCC's repossession and resale provisions.[17] Although § 9–507(1) provides for an affirmative debtor's remedy, not a defense to a deficiency judgment, *see Atlas Thrift Co. v. Horan*, 27 Cal.App.3d 999, 1007–09, 104 Cal.Rptr. 315, 320–21 (1972); *Leasco Data Process Equipment Corp. v. Atlas Shirt Co.*, 66 Misc.2d 1089, 1091–92, 323 N.Y.S.2d 13, 16 (1971), it is commonly used to achieve a setoff, as well as a surplus for the debtor after setoff. *See id.; Mallicoat v. Volunteer Finance &*

---

> third parties of whom the court cannot acquire jurisdiction."

**16.** To be sure, a defendant presumably would prefer to have the court grant leave to file a late or amended answer, without a compulsory counterclaim, rather than refuse leave to file any additional pleading (*i. e.*, a half loaf is better than none). But that preference would be premised on the assumption that, if an amended answer and compulsory counterclaim must be considered together, there is an increased risk that the court properly could—and would—deny leave to file both. We do not speak to that assumption on the facts here. Rather, we accept as a premise the motion judge's determination that the circumstances warranted the filing of an amended answer. That determination is, in effect, the unchallenged law of the case which underlies our decision on the deficiency judgment question in Part II, *supra*. Franklin had the opportunity to argue that we should decide the counterclaim issue first and remand for a new exercise of discretion, without reaching the deficiency judgment issue, if we were to conclude (as we have here) that late filing of an amended answer and compulsory counterclaim are necessarily related. That approach, of course, would have invited the exercise of trial court discretion without knowledge of this court's position on the interrelationship of a creditor's and

debtor's respective rights under the UCC, D.C. Code 1973, §§ 28:9–504(2) and 28:9–507(1), when the creditor allegedly violated the § 28:9–504(3) notice provisions. Franklin apparently preferred to resolve the question of two significant unknowns by having this court accept the motions judge's allowance of the amended answer and reach the deficiency judgment issue, with whatever implications that would have for the counterclaim issue.

**17.** The UCC, D.C.Code 1973, § 28:9–507(1), provides:

> If it is established that the secured party is not proceeding in accordance with the provisions of this Part disposition may be ordered or restrained on appropriate terms and conditions. If the disposition has occurred the debtor or any person entitled to notification or whose security interest has been made known to the secured party prior to the disposition has a right to recover from the secured party any loss caused by a failure to comply with the provisions of this Part. If the collateral is consumer goods, the debtor has a right to recover in any event an amount not less than the credit service charge plus ten per cent of the principal amount of the debt or the time price differential plus ten per cent of the cash price.

*Loan Corp.,* 415 S.W.2d 347 (Tenn.1966); *Farmers State Bank of Parkston v. Otten,* 204 N.W.2d 178, 182 (S.D.1973); *Conti Causeway Ford v. Jarossy, supra.* It appears wholly at odds with the regulatory scheme, therefore, to permit a debtor to file an amended answer, based on the creditor's alleged violations of statutes and regulations, while denying the debtor the right to assert a compulsory counterclaim (which otherwise will be forever lost) based on the very same facts and provisions of law.

Our view, on these facts, that the right to file a compulsory counterclaim should be inseparable from the right, with leave of court, to file an amended answer, is reinforced by Super.Ct.Civ.R. 54(c). It provides, except with respect to default judgments, that

> every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings.

It follows, apropos of the Randolphs' situation, that

> under appropriate circumstances, a defendant who has demonstrated that he is entitled to relief may be granted such relief even though his pleadings did not contain a counterclaim designated as such. [6 Moore's Federal Practice ¶ 54.60, at 1215 (2d ed. 1976).]

Consistent with this principle, Super.Ct. Civ.R. 15(b) even permits post-trial amendment of pleadings, including the addition of a counterclaim, if the proof at trial warrants it. *See Moore v. Moore,* D.C.App., 391 A.2d 762, 767–69 (1978). Arguably, therefore, if the Randolphs had proved their defense they would have been entitled to affirmative relief based on that proof even if a counterclaim had not been filed until after trial.

This liberal post-trial amendment policy is premised on the principle of Super.Ct. Civ.R. 15(a) that leave of court to amend pleadings at any time "shall be freely given when justice so requires"—which is also ground for granting leave to file a counterclaim under Rule 13(f). *See* note 14, *supra.*

It has been suggested, therefore, that "the same liberal standards for consideration would seem to apply under Rule 13 or under Rule 15." *Mercantile Trust Co. National Ass'n. v. Inland Marine Products Corp.,* 542 F.2d 1010, 1012 n.5 (8th Cir. 1976); *see Smith Contracting Corp. v. Trojan Const. Co.,* 192 F.2d 234 (10th Cir. 1951); *Rosenwald v. Vornado, Inc.,* 70 F.R.D. 376 (E.D. Pa.1976); Wright & Miller, 6 Fed.Prac. and Proc.: Civil § 1479, at 403 (1971).

■ In summary, on the basis of Rules 13, 15, and 54 there is a virtual presumption that leave to file a compulsory counterclaim is inherent, as a matter of "justice," in a court's grant of leave to file an answer, when it appears that the facts necessary to establish the defense would be sufficient in themselves to establish the counterclaim. Given the inherently discretionary nature of the inquiry, however, we could not say that such a presumption is conclusive. We therefore must consider whether, on the facts here, there were good reasons, nonetheless, why leave to file the counterclaim was properly denied.

C. By stressing in this case that the facts necessary to establish the defense would establish the counterclaim—and in this way merging the questions of discretion as to amended answer and counterclaim—we to some extent have lessened the relevance of cases reviewing trial court discretion as to proffered counterclaims alone. On the other hand, it is helpful to test our judgment by reference to the traditional criteria by which motions for leave to file a counterclaim are judged, apart from consideration of a relationship to the defendant's answer.

The Supreme Court has stated, with reference to Rule 15(a):

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be

"freely given." [*Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).]

Similarly, as to Rule 13(f), we have noted that "amendments should be allowed with great liberality at any stage of the case unless they prejudice the rights of the opposing party." *Pyramid Nat. Van Lines v. Goetze, supra* at 695.

In the present record we find none of the reasons which the courts have used to justify denial of leave to file a counterclaim. This was the Randolphs' first such request.[18] The case had been pending little more than ten months.[19] No party previously had requested a continuance.[20] There was no indication of bad faith or dilatory motive on the Randolphs' part.[21] The counterclaim was not obviously without merit.[22] Finally, we do not perceive prejudice. The facts underlying the Randolphs' allegations were readily ascertainable from documents which Franklin presumably would introduce in support of the deficiency claim.[23] Accordingly, the motions judge concluded that the Randolphs should be allowed to defend themselves with an amended answer, filed late. In also asking leave to file a counterclaim, the Randolphs merely were seeking to recast the allegations of their amended answer into a request for affirmative relief—relief which, under the UCC, would be awardable upon proof of the defense. We therefore conclude that there was little, if any, danger of surprise or prejudice to Franklin from late filing of the counterclaim. *See Maschmeijer v. Ingram,* 97 F.Supp. 639, 643 (S.D.N.Y.1951). The presumptive unity of amended answer and compulsory counterclaim has not been rebutted.

Accordingly, we hold that the case must be remanded to the trial court for entry of an order permitting the Randolphs to file their counterclaim. In doing so, however, we should make two final observations.

■ D. We essentially are remanding to permit the Randolphs to pursue affirmative relief under UCC § 9–507(1).[24] We sustain the division's view that the transaction was not usurious; thus, there is no longer a basis for the Randolphs' usury count in the proffered counterclaim seeking return of payments made.

More particularly, the Randolphs were required to pay a finance charge of 14% of the principal balance per year, the charge

---

**18.** *Compare United States Plywood Corp. v. Hudson Lumber Co.,* 139 F.Supp. 19 (S.D.N.Y. 1955) (two prior counterclaims stricken; case had been pending three years).

**19.** *Compare New Britain Mach. Co. v. Yeo,* 358 F.2d 397, 410 (6th Cir. 1966) (four year delay; party had earlier told the court there would be no counterclaim); *Kirbens v. Wodis,* 295 F.2d 372, 375 (7th Cir. 1961) (30 months delay); *Upper Lakes Shipping Ltd. v. International Longshoremen's Ass'n.,* 293 F.Supp. 207, 209 (S.D.N.Y.1968) (three year delay); *Larson v. Arnold E. Verdi Trucking, Inc.,* 28 F.R.D. 377 (E.D.Pa.1961) (two year delay; laches); *Julian B. Slevin Co. v. Bartgis Bros. Co.,* 142 F.Supp. 688 (D.Md.1956) (delay of more than one year; permissive counterclaim).

**20.** *Compare New Britain Mach. Co. v. Yeo, supra.*

**21.** *Compare Kuris v. Pepper Poultry Co.,* 2 F.R.D. 361 (S.D.N.Y.1941); *Trantham v. Canal Ins. Co.,* 117 F.Supp. 241, 247 (E.D.Tenn.1953), *aff'd,* 220 F.2d 752 (6th Cir. 1955); *United States v. Shafter,* 49 F.R.D. 164, 169–70 (S.D.N. Y.1969), *aff'd,* 424 F.2d 281 (2d Cir. 1970), *cert. denied,* 400 U.S. 827, 91 S.Ct. 54, 27 L.Ed.2d 57

(1971); *Avon Publishing Co. v. American News Co.,* 137 F.Supp. 896 (S.D.N.Y.1955).

**22.** *Compare Local No. 552, United Brick & Clay Workers of America, AFL–CIO v. Hydraulic Press Brick Co.,* 371 F.Supp. 818, 828 (S.D. Mo.1974); *Laitram Corp. v. Deepsouth Packing Co.,* 279 F.Supp. 883, 887 (E.D.La.1968); *Kaplan v. United States,* 42 F.R.D. 5 (C.D.Cal. 1967).

**23.** *Compare American Airlines Inc. v. Transport Workers Union,* 44 F.R.D. 236 (N.D.Okl. 1968) (permissive counterclaim; dealt with entirely different subject matter).

**24.** *See* note 17, *supra.* Our reference to § 9–507(1) is not intended to prejudge the availability of alternative, common law remedies. *See generally* Colo., *supra* note 10, at 232–33; *Gilmore, supra* at § 44.9.2; *cf.* D.C.Code 1973, § 28:9–505(1) (specifically preserves conversion remedy in case where debtor has paid 60% of the cash price and repossessor has failed to dispose of collateral within 90 days after repossession).

allowable under the Motor Vehicle Financing Act, *supra,* for a "class 3" automobile (which includes the 1965 second-hand Pontiac). They now claim that, because Lee Ford's assignment of their note to Franklin was not an arms length transaction, the schedule of permissible charges under the Act does not apply, and the transaction was accordingly usurious in exceeding the 8% annual interest limit in effect at the time. D.C.Code 1973, § 28–3301. *See Beatty v. Franklin Investment Co.,* 115 U.S.App.D.C. 311, 319 F.2d 712 (1963). For the reasons elaborated in the division opinion, 368 A.2d at 1153–54, we reject the Randolphs' argument. We hold that in this respect the transaction is covered by the Motor Vehicle Financing Act, *supra,* permitting a 14% finance charge; it was not usurious.

E. Finally, under UCC § 9–507(1), remedies are theoretically available for wrongful repossession as well as wrongful resale. *See Franklin Investment Co., Inc. v. Smith,* D.C.App., 383 A.2d 355 (1978); J. White & R. Summers, *supra* § 26–14 at 998. Although presumably this can lead to only one recovery, *see Franklin Investment Co., Inc. v. Smith, supra* at 358, there is a theoretical possibility that the value of the automobile at the time relevant to a wrongful repossession action will differ from the value at the time relevant to a wrongful resale action. In reversing Franklin's judgment for a deficiency because of resale without the required notice to the Randolphs, we did not have to deal with their claim that repossession also had been wrongful. Now, however, we must consider whether to reach that issue, in view of our reinstatement of the counterclaim.

There is nothing in this record to indicate that the Randolphs' 1965 Pontiac had different values at the times of repossession and resale, four months apart. Moreover, the possibility that the Randolphs can prove a loss, based on a value of the auto in excess of the $1,128 balance due on their debt at the time of repossession, is highly speculative. Possibly, in fact, the Randolphs will ask for the formula remedy under § 9–507(1), arguing that it is available irrespective of any proved loss. Under the circumstances, therefore, we conclude that reinstatement of the counterclaim does not oblige us to consider the repossession issue.

## IV.

Franklin's deficiency judgment is accordingly reversed, and the case is remanded to the trial court for entry of an order granting the Randolphs leave to file their counterclaim.

*So ordered.*

REILLY, Chief Judge, Retired, with whom NEBEKER and HARRIS, Associate Judges, join, concurring in part and dissenting in part:

For the reasons stated in our original decision in this case, 368 A.2d 1151, 1154–55, I concur with the holding of the majority that the finance charge challenged by appellants was not a usurious transaction, but was permissible under the Motor Vehicle Financing Act, D.C.Code 1973, § 40–902. When the division of the court heard this case, appellants' objections to the trial court's judgment were focused primarily upon this issue and an asserted misconstruction of the Consumer Credit Protection Act of 1971—a question which the en banc court found it unnecessary to reach in view of its interpretation of § 504(3) of the Uniform Commercial Code (D.C.Code 1973, § 28:9–504(3)).

In short, the en banc court has overruled the division which decided this case in the first instance by holding that because the creditor failed to conform to the letter of this subsection by neglecting to send a second notice of resale to the debtor, the trial court was powerless to grant a deficiency judgment even though it remedied whatever loss the delinquent debtor might have sustained from lack of notice by crediting him with the fair value of the security (*i. e.,* the repossessed car) over and above the proceeds of the resale. In our original opinion, we viewed this offset against the balance of the claimed deficiency as a sufficient remedy for the grievance suffered by the creditor's non-observance of all the procedural requirements of Section 504(3).

Despite the extensive research of the authorities which shaped the result reached by the majority, I am not convinced that it was the intent of Super.Ct.Civ.R. 55–II(b) to deprive the trial courts here of any authority whatsoever to entertain actions for deficiency judgments if there is some showing of a minor departure from all the procedural steps enumerated in Section 504, *supra,* and the local regulations,[1] which, on their face, merely paraphrase the applicable statutory provisions. The underlying purpose of these provisions is to prevent a debtor's obligations from being unfairly increased by crediting him only with the proceeds of a collusive resale instead of the reasonable commercial value of the repossessed commodity. Thus, as the majority opinion (with meticulous fairness) recognizes, the courts of many jurisdictions have construed these provisions of the Uniform Commercial Code as not barring a deficiency judgment, despite a lack of notice of resale, if the debtor's account is ultimately credited with the fair value of the forfeited security.[2]

The opinion also cites with approval an impressive list of decisions by other courts holding to the contrary.[3] With all deference to the majority, I do not regard the rationale of those decisions as so persuasive that this court should now reverse the judgment of the trial court. There is nothing in the trial record which even remotely indicates that the appellants here might have taken steps to redeem the car had they received notice of the second resale, for it is apparent that once the car had been repossessed they made no efforts to negotiate with their creditors any terms for reclaiming it.

While the majority disclaims reading any substantive content into Super.Ct.Civ.R. 55–II(b), its opinion does attach what seems to me undue relevance to it in arriving at its conclusion with respect to the intent of the applicable statute.

It is not within the province of the Superior Court to issue rules which are other than procedural. Congress has ordained that such court shall conduct its business according to the federal rules of civil and criminal procedure and may modify such rules only with the approval of the District of Columbia Court of Appeals.[4] This particular rule is not a part of the Federal Rules of Civil Procedure. It was submitted to this court as one of many items in a large package of revisions of the rules of the Court of General Sessions pursuant to the mandate of the District of Columbia Court Reform and Criminal Procedure Act of 1970, Pub.L.91–358, 84 Stat. 487. In granting approval of these revisions, our court made it clear that to the extent such rules modified the Federal Rules of Civil Procedure, no rights conferred by substantive law were affected.[5] Thus it is apparent that Rule 55–II(b) when read in light of this reservation did not preclude the trial court here—in the absence of any controlling decision in this jurisdiction—from considering plaintiff's rights to a deficiency judgment under the relevant provisions of the Code.

In the earlier decision, our affirmance of the denial of the belated motion to file a counterclaim was academic in view of our treatment of the numerous defenses presented after the amended answer. In light of the reversal of this judgment, the en banc court does have to deal with this issue. I do not agree, however, that previous decisions of this court compel us to reverse the ruling of the motions judge and remand the case for reinstatement and trial of the counterclaim.

ORDERED that, to the extent these rules modify the Federal Rules of Civil Procedure, they are hereby approved. *This approval does not preclude assertion of any rights otherwise conferred by law which may be denied through the application of any of these rules or confer any authority not otherwise provided by law.* (Emphasis added.)

1. 5AA DCRR §§ 5.2 and 5.3.

2. *See* note 12, *supra.*

3. *See* note 11, *supra.*

4. D.C.Code 1973, § 11–946.

5. Such approval was expressed in an order dated Feb. 1, 1971, as follows:

While the filing of a counterclaim with the answer, if it arises out of the same transaction that is the subject of the opposing party's claim, is indeed required under Super.Ct.Civ.R. 13(a), such filing is compulsory only in the sense that failure to do so bars the potential counterclaimant from thereafter commencing a separate action for recovery. Wholly unlike the case of *Delaney v. Basiliko,* D.C.Mun.App., 208 A.2d 630 (1965),[6] upon which the opinion relies, an answer was filed. It did not advert to any counterclaim. Thus, defendants failed to preserve such right. It is true that such oversight is not necessarily fatal, for a defendant may later set up the counterclaim as an amendment with leave of the court under subsection (f) of Rule 13, *supra.* But the text of this subsection, in contradistinction to the compulsory language of subsection (a), makes it clear that such leave is entirely within the discretion of the court passing upon the request. In *Pyramid Nat. Van Lines v. Goetze,* D.C.Mun.App., 66 A.2d 693, 695 (1949), where leave to reinstate a previously withdrawn counterclaim was granted at a new trial, this court in upholding such ruling did so on the ground that "the trial court is allowed wide discretion in determining such matters." While the majority opinion here cites some other language from *Pyramid* in support of its directive, it is plain that the reversal of the trial court's ruling impinges upon rather than vindicates the discretion committed to trial judges by the rule.

---

**6.** There, the defendant did not file an answer within the time prescribed, but later obtained from the trial court leave to file a late answer. The only issue on appeal was whether on the basis of this ruling he was not also entitled to file a counterclaim. Citing the mandatory text of Super.Ct.Civ.R. 13(a), our court held that he was.