L. S. CORNETT, APPELLANT AND CROSS-APPELLEE, v. WHITE MOTOR CORPORATION, A FOREIGN CORPORATION, ET AL., APPELLEES AND CROSS-APPELLANTS, NATIONAL INDEMNITY COMPANY, A CORPORATION, ET AL., APPELLEES AND CROSS-APPELLEES, UNITED STATES OF AMERICA, INTERVENER-APPELLANT.

209 N. W. 2d 341

Filed July 13, 1973. No. 38877.

Marks, Clare, Hopkins. Rauth & Garber, for appellant Cornett.

William K. Schaphorst and Paul W. Madgett, for appellant United States of America.

Hird Stryker of Fraser, Stryker, Marshall & Veach, for appellee White Motor Corp.

Gross, Welch, Vinardi, Kauffman, Schatz & Day, Kutak, Rock, Cohen, Campbell & Peters, Abrahams, Kaslow & Cassman, and Beber & Richards, for appellees National Indemnity Co. et al.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

SMITH, J.

The central issues on appeal arise out of an arguable train of transactions. A contract between the City of Omaha and defendant Metropolitan Sanitation Company for the latter to collect refuse. Respecting the contract, delivery and acceptance of a performance bond with the city the obligee, Metropolitan the principal, and defendant National Indemnity Company the surety. Metropolitan's purchase of 45 new garbage trucks subject to 4 security agreements for payment of the balance owing the seller, defendant White Motor Corporation. Plaintiff's guaranty of payment of the obligations of Metropolitan under the security agreements. Default by Metropolitan. Expenses incurred by White Motor in repossession, repair, and sale of the trucks.

In a declaratory judgment action plaintiff, L. S. Cornett, alleged in part as follows: White Motor failed to prove the reasonable value of its expenses relating to repossession, repair, and cleaning of the repossessed trucks for sale. It also failed to sell the repossessed trucks in a commercially reasonable manner and therefore ought not to recover a deficiency judgment. The performance bond executed by National Indemnity covered the alleged deficiency liability to White Motor.

White Motor in a counterclaim against Cornett and cross-claims against Metropolitan and National Indemnity sought a deficiency judgment against Cornett and a declaratory judgment of liability of National Indemnity.

After trial in April 1972, the court entered its judgment on October 2, 1972. White Motor recovered $180,-895.18, which represented not only a deficiency liability of Metropolitan and Cornett but also the expenses of repossession, repair, and cleaning. White Motor was also awarded interest on the judgment at 6 percent a year from September 29, 1972, the date the claims were found to have become liquidated. The court in effect adjudged that the bond of National Indemnity did not cover the deficiency judgment for White Motor.

Cornett appeals. He asserts that the court erred in its judgment on the above allegations of his petition. White Motor cross-appeals. Under the security agreements it asserts a right to interest at 9 percent a year on the balance of the unpaid obligations from March 10, 1972, the date of default, less proceeds realized by it from sales of the trucks.

The refuse collection contract between Metropolitan and the city extended over a period of 10 years from January 1, 1968. It required a bond for performance and payment in accordance with a contract specification. The specification reads: "To secure . . . full . . . performance of . . . all terms . . . of this contract, the Contractor shall furnish a bond with . . . surety . . . in the amount of $250,000.00. The . . . bond . . . shall in part indemnify the City against any loss resulting from any failure of performance by the Contractor . . . ."

The bond which National Indemnity executed November 3, 1967, for a minimum of 5 years incorporated the refuse collection "Contract, Proposal and Specification." It provided as follows: "THIRD: The Principal and Surety . . . agree to pay all persons . . . having Contracts directly with the Principal or with sub-contractors all just claims due them for the payment of all laborers and mechanics for labor that shall be performed, for the payment of all material and equipment furnished, and for the payment of material and equipment rental which is actually used or rented in the performance of

the Contract for which this Bond is given, when the same are not satisfied out of the portion of the Contract price which the City may retain until completion of the Contract period . . . ."

In November 1968 Metropolitan agreed to purchase the 45 trucks from White Motor, but the parties consummated the agreement during the period between April 30 and June 28. White Motor recorded 4 security agreements covering the purchases. The time price differential was computed at 5 percent, and the time balances were payable in monthly installments as follows:

| AGREEMENT DATE | TIME BALANCE | INSTALLMENTS |
|---|---|---|
| April 30 | $189,750.12 | $3,405.12 on June 10, 1969 |
| | | 3,411.00 next 23 months |
| | | 2,997.00 next 36 months |
| May 29 | $505,999.92 | $9,079.92 on July 10, 1969 |
| | | 9,096.00 next 23 months |
| | | 7,992.00 next 36 months |
| May 29 | $105,416.65 | $1,891.65 on July 10, 1969 |
| | | 1,895.00 next 23 months |
| | | 1,891.65 next 36 months |
| June 28 | $147,583.31 | $2,648.31 on August 10, 1969 |
| | | 2,653.00 next 23 months |
| | | 2,331.00 next 36 months |

The security agreements also provided: In event the time balance was not paid within the time contemplated by the monthly installments, time being of the essence, Metropolitan was to pay interest at the highest legal rate allowable on the amount outstanding after such time.

Cornett orally agreed in November 1968 to guarantee Metropolitan's performance of the agreement to purchase and pay for the 45 trucks from White Motor. On May 27, 1969, he accordingly signed and delivered to White Motor a written guarantee of "punctual payment and prompt performance of all indebtedness or obligation," present or future, of Metropolitan to White Motor. Cor-

nett then owned 49 percent of Metropolitan's capital stock.

Deterioration in the financial condition of Metropolitan and in performance of the contract caused Metropolitan and Omaha on January 8, 1970, to agree to terminate the contract March 1, 1970. Default on the security agreement occurred March 10, 1970. According to Leroy Olson, a certified public accountant in the firm of Haskins & Sells, the unpaid principal on the security agreements then totaled $681,568.07.

On March 10, 1970, Metropolitan with Cornett's knowledge and acquiescence formally requested White Motor to repossess the 45 trucks. The next day White Motor in notifications to Metropolitan and Cornett demanded payment of the balance due. It also threatened in the event of nonpayment to sell the trucks and look to Cornett for payment of any deficiency. The only reply was a letter in which Cornett by his lawyer denied any personal liability on his part.

On March 27, 1970, White Motor gave notice of public sale of the 45 trucks which it had repossessed. At the public sale which occurred April 20, 1970, White Motor itself purchased the trucks at a price of $8,500 each or a total of $382,500.

From repossession to the sale White Motor had performed repairs on some trucks and had contracted with National Disposal Company to steam clean the trucks. Necessity for the work was clear. Time was too short, however, for completion prior to the public sale; consequently, White Motor continued the work afterwards. It subsequently negotiated piecemeal sales from which it realized $577,500. The amount of the unpaid principal decreased as White Motor sold the trucks piecemeal at private sales from May 18 to December 31, 1970. Interest on those amounts to the entry of the judgment, we judicially notice, computed at 9 percent a year, is $49,059.99.

There was no direct testimony that the expenses in-

curred by White Motor in the repossession, repair, and cleaning of the trucks were reasonable. There was no evidence, however, of unreasonableness. White Motor kept voluminous, detailed records pertaining to the repairs performed by it and to the cost, all of which it did in the regular course of its business. The accountant, Olson, testified from the records to expenses of $76,827.11. The District Court found that White Motor was entitled to recover that sum, and it therefore increased the amount of recovery to $180,895.18.

The burden of production of evidence of the value of labor or materials is satisfied if such value may be reasonably inferred from the evidence. See Sorensen Constr. Co. v. Broyhill, 165 Neb. 397, 85 N. W. 2d 898 (1957). Allowance of the expenses to White Motor was not erroneous.

The contention of Cornett on the commercial unreasonableness of the public sale is governed by the Uniform Commercial Code. The direct effect of a sale that is not commercially reasonable is to alter the measure of the deficiency. In such case the fair and reasonable value of the collateral as of the time of the sale is offset against the balance due on the security agreement. See, § 9-504, U. C. C.; Mercantile Financial Corp. v. Miller, 292 F. Supp. 797 (E. D. Pa., 1968). No sound policy requires us to inject a drastic punitive element into a commercial context. The measure of the deficiency is not otherwise questioned, and the nature of the public sale by White Motor under the circumstances is immaterial.

We turn to the rule that governs the claims of liability against National Indemnity. The contract of a surety for compensation receives an interpretation in favor of objectively reasonable expectations of the obligee. Abel v. Southwest Cas. Ins. Co., 182 Neb. 605, 156 N. W. 2d 166 (1968).

We interpret the provisions of the National Indemnity bond to be a financial resource to which Omaha could

resort in the event the city took over the garbage collection operation on default of Metropolitan. See 10 Appleman, Insurance Law and Practice, § 5835, p. 53 (1943). From that resource the city could reasonably expect only to obtain money required to continue the operation from day to day. In our interpretation, the bond of National Indemnity did not cover the liability of Metropolitan to White Motor.

We have decided on Cornett's appeal that the National Indemnity bond did not cover the obligations in question. That conclusion applies to the same contention of White Motor.

The provisions of the security agreements that amounts outstanding on default should bear interest at the highest legal rate allowable were valid. The applicable statutory maximum is 9 percent a year. § 45-101, R. R. S. 1943. The amounts outstanding on default included the items of principal less the resale proceeds, or $104,068.07, and interest, $49,059.99, or a total of $153,128.06. White Motor was also entitled to recover $76,827.11 for the repossession, repair, and cleaning. It expressly does not seek prejudgment interest on the latter sum. It was therefore entitled to recover judgment against Cornett in the sum of $229,955.17 plus interest at the rate of 9 percent a year from October 2, 1972. See, §§ 45-101, R. R. S. 1943, 45-103, R. S. Supp., 1972; Western Securities Co. v. Naughton, 124 Neb. 702, 248 N. W. 56 (1933); Omaha Loan & Trust Co. v. Hanson, 46 Neb. 870, 65 N. W. 1058 (1896); Havemeyer v. Paul, 45 Neb. 373, 63 N. W. 932 (1895).

We modify the judgment of the District Court by awarding White Motor judgment against Cornett in the sum of $229,955.17 plus interest at 9 percent a year from October 2, 1972. The judgment, so modified, is affirmed.

AFFIRMED AS MODIFIED.