**UNITED STATES of America, Plaintiff-Appellee,**

v.

**WHITEHOUSE PLASTICS d/b/a Aladdin Amusement Products et al., Defendants-Appellants.**

**No. 73-3610.**

United States Court of Appeals, Fifth Circuit.

Sept. 27, 1974.

Rehearing Denied Oct. 30, 1974.

Henry O. Getchell, John W. Mc-Mackin, Fort Worth, Tex., for defendants-appellants.

Frank D. McCown, U. S. Atty., William L. Johnson, Jr., Asst. U. S. Atty., Fort Worth, Tex., for plaintiff-appellee.

John B. Garrett, Forth Worth, Tex., for Whitehouse.

Sam J. Day, Fort Worth, Tex., for Weiner.

Before BROWN, Chief Judge, and GODBOLD and RONEY, Circuit Judges.

GODBOLD, Circuit Judge:

This action arises from an effort by the Small Business Administration, appellee, to collect under guaranty agreements signed by E. L. Baker, Jr., and Henry Simon, Jr., appellants, in connection with a 1970 loan of $200,000 to Whitehouse Plastics Corporation. Whitehouse defaulted, and SBA foreclosed and sold at public auction the personal property securing the Whitehouse note. Then SBA brought this suit seeking to establish a deficiency judgment against appellants and others.

Appellants moved for a directed verdict contending, inter alia, that the government had failed to show reasonable notice to appellants of the time and place of sale, failed to show that the sale was commercially reasonable, and thus failed to prove its right to a deficiency. By special interrogatories the jury found that appellants had reasonable notice of the sale; that the method, manner, time, place and terms of the disposition were commercially reasonable; and that the value of the collateral at the time and place of sale was $31,696.98. Based on the jury's findings, the District Judge entered judgment against appellants. On appeal, appellants' basic contention is that the evidence is insufficient to support each of the jury's findings and that thus they were entitled to a directed verdict. Within this contention they assert as supporting arguments that they were entitled to notice of the sale; that the evidence was insufficient to prove notice; that absent notice the governing law would either bar a deficiency judgment or at the least shift to the SBA the burden of proving that the value of the property did not exceed the amount received from the sale; and that if the second (burden shift) rule is the appropriate one, there was insufficient evidence to conclude that the SBA met its burden. As part of this final argument, appellants submit that one exhibit should not have been admitted under the business records exception to the hearsay rule. We address each argument in turn.

We may assume, without the necessity of deciding, that Texas courts [1] would find correct the following contentions of the appellants: (1) that as guarantors where the primary debtor was a business no longer in operation they were "debtors" within the meaning of Vernon's Texas Codes Annotated, Business & Commerce [hereinafter V.T.C.A., Bus. & C.] § 9.504(c) requiring notice to "debtors" of the time and place of any public sale; (2) that under V.T.C.A., Bus. & C. § 9.501(c) the right to notice was non-waivable; and (3) that there was insufficient evidence on which to predicate a finding of reasonable notice with respect to either Baker or Simon.

The first question thus squarely presented is whether failure to give notice precluded the SBA from recovering a deficiency judgment. Neither we nor the parties have discovered any Texas case on point, but as *Erie* prognosticators we believe that Texas would answer in the negative. The version of V.T.C.A., Bus. & C. § 9.504(c) in force at the time the parties contracted and at the time of disposition of the collateral [2] tracked the language of the

---

1. The security agreement involved here provided that Texas law would govern the transaction. We need not decide, therefore, whether in the absence of such a provision Texas law or some form of federal common law would govern.

2. (c) Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts.

Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or

Uniform Commercial Code § 9–504(3). Thus we look for guidance to the decisions of other jurisdictions deciding the effect of failure to comply with the provisions of their own statutes enacting U.C.C. § 9–504(3). Examination of those decisions reveals two conflicting lines of authority. One line holds that in the absence of compliance with the notice requirement the secured party may not obtain a deficiency judgment.[3] The other line holds that such failure does not act as a bar to recovery of a deficiency but creates at most a rebuttable presumption that the value of the collateral equals the amount of the debt, thus placing on the secured party the burden of proving that the fair market value of the goods sold was less than this amount.[4] We believe this second line of cases to be the better rule and the one which Texas would adopt.

The "no notice, no deficiency" rule undoubtedly serves as an incentive to compliance with the notice provisions of § 9–504(3), but the alternative of creating a rebuttable presumption favoring the debtor would also tend to serve this function and appears more in keeping with the scheme of the Code. U.C.C. § 9–507(1) [V.T.C.A., Bus. & C. § 9–507(a)] delineates the results of failure to comply with, inter alia, § 9–504 as follows:

If it is established that the secured party is not proceeding in accordance with the provisions of this Part disposition may be ordered or restrained on appropriate terms and conditions. If the disposition has occurred the debtor or any person entitled to notification or whose security interest has been made known to the secured party prior to the disposition has a right to

reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, and except in the case of consumer goods to any other person who has a security interest in the collateral and who has duly filed a financing statement indexed in the name of the debtor in this state or who is known by the secured party to have a security interest in the collateral. The secured party may buy at any public sale and if the collateral is of a type customarily sold in a recognized market or is of a type which is the subject of widely distributed standard price quotations he may buy at private sale.

3. *See, e. g.*, Atlas Thrift Co. v. Horan, 27 Cal.App.3d 999, 104 Cal.Rptr. 315 (1972); Commercial Credit Corp. v. Lloyd, 12 U.C. C.R. 15 (Dist.Col.Sup.Ct.1973); Turk v. St. Petersburg Bank & Trust Co., 281 So.2d 534 (Fla.Dist.Ct.App.1973); Edmondson v. Air Service Co., 123 Ga.App. 263, 180 S.E.2d 589 (1971); Braswell v. American National Bank, 117 Ga.App. 699, 161 S.E.2d 420 (1968); Twin Bridges Truck City, Inc. v. Halling, 205 N.W.2d 736 (Iowa 1973); One Twenty Credit Union v. Darcy, 40 Mass.App. 64 (1968); Camden National Bank v. St. Clair, 309 A.2d 329 (Me.1973); Foundation Discounts, Inc. v. Serna, 81 N.M. 474, 468 P.2d 875 (1970); Leasco Data Processing Equipment Corp. v. Atlas Shirt Co., 66 Misc.2d 1089, 323 N.Y.S.2d 13 (N.Y.C.Civ. Ct.1971); Skeels v. Universal CIT Credit

Corp., 222 F.Supp. 696 (W.D.Pa.1963), vacated on other grounds, 335 F.2d 846 (CA 3, 1964); Aimonetto v. Keepes, 501 P.2d 1017 (Wyo.1972).

4. *See, e. g.*, Weaver v. O'Meara Motor Co., 452 P.2d 87 (Alaska 1969); Universal CIT Credit Co. v. Rone, 248 Ark. 665, 453 S.W. 2d 37 (1970); Norton v. National Bank of Commerce, 240 Ark. 143, 398 S.W.2d 538 (1968); Leasing Associates v. Slaughter & Son, 450 F.2d 174 (CA 8, 1971) (applying Arkansas law); Community Management Ass'n of Colorado Springs, Inc. v. Tousley, 505 P.2d 1314 (Colo.App.1973); Tauber v. Johnson, 8 Ill.App.3d 789, 291 N.E.2d 180 (1972); Abbott Motors, Inc. v. Ralston, 28 Mass.App. 35 (1964); Cornett v. White Motor Corp., 190 Neb. 496, 209 N.W.2d 341 (1973); Conti Causeway Ford v. Jarossy, 114 N.J.Super. 382, 276 A.2d 402 (Dist.Ct. 1971), aff'd 118 N.J.Super. 521, 288 A.2d 872 (Sup.Ct., App.Div.1972); T & W Ice Cream, Inc. v. Carriage Barn, Inc., 107 N.J. Super. 328, 258 A.2d 162 (County Ct.1969); Lincoln Rochester Trust Co. v. Howard, 347 N.Y.S.2d 306 (Rochester City Ct.1973); Chase Manhattan Bank v. Lyon Air, Inc., N.Y.L.J., March 15, 1971, p. 2, col. 4 (Sup. Ct.N.Y.1971); Investors Acceptance Co. v. James Talcott Inc., 61 Tenn.App. 307, 454 S.W.2d 130 (1970); Mallicoat v. Volunteer Finance & Loan Corp., 57 Tenn.App. 106, 415 S.W.2d 347 (1966); Grant County Tractor Co., Inc. v. Nuss, 6 Wash.App. 866, 496 P.2d 966 (1972).

recover from the secured party any loss caused by a failure to comply with the provisions of this Part.

In view of this specific statutory remedy we doubt that the Code's drafters intended that failure to give notice would bar the creditor's right to a deficiency judgment. Other courts have reached the same conclusion, see, e. g., Grant County Tractor Co. v. Nuss, 6 Wash. App. 866, 496 P.2d 966 (1972), as have at least two commentators.[5] This conclusion is strengthened by the discussion in Norton v. National Bank of Commerce, 240 Ark. 143, 398 S.W.2d 538, 539–540 (1966), which indicates that amicus briefs filed in that case for the Permanent Editorial Board of the U.C.C. concluded that improper disposition by the secured party made the secured party liable for damages suffered as a result.[6]

Section 9–507 clearly gives the debtor the right to recover "any loss caused by a failure" to give notice, including necessarily any prejudice to the debtor from any loss of his right of redemption under § 9–506 or from loss of opportunities either to encourage bidders to attend the sale or to sell off some of the property piecemeal before the date set for the sale. In short, the defendants were free to submit to the jury under § 9–507 any evidence that they were prejudiced by the lack of notice, and under the second line of cases noted above the burden would be on the secured party to rebut such evidence by showing that the fair market value of the goods was no more than the amount received at the sale. Particularly where, as here, the transactions were commercial dealings between reasonably experienced businessmen, we believe that the Texas courts would not invoke a harsher rule. "No sound policy requires us to inject a drastic punitive element into a commercial context." Cornett v. White Motor Corp., 190 Neb. 496, 209 N.W.2d 341, 344 (1973).

■ Assuming as we do that Texas would adopt a rule no harsher than that shifting to the secured party the burden of proving the fair market value of the property sold, we find that there was adequate evidence from which the jury could, as it did, infer that the fair market value of the property did not exceed the amount received from the sale. Gresham, SBA's representative at the sale, testified that he put in a "protective bid" of $17,500 for all of the property to be sold, the purpose of which he described as "to insure that the equipment does not sell at less than its under-the-hammer value; that it doesn't sell too cheaply." He further testified that he had been appraising property for the SBA for about 12 years and that he could have entered a higher "protective bid" up to a maximum of $25,000. While Gresham's assessment is subject to attack on grounds that as an employee of the secured party he was not disinterested and that the assessment was hastily made, we cannot say that it was so lacking in substance that the jury was not entitled to give it weight. The only higher assessment of the value of the goods was that of defendant Baker, whose testimony suggests that his valuation was based on the initial cost

---

5. "Since the Code specifies in Section 9–507 that the secured party is liable in damages, there seems to be no need to add through judicial gap-filling the additional penalty of a right to recover the deficiency."
Clovis, Secured Transactions Under the U.C.C. [Vol. 1 of Bender's U.C.C. Service] 74 (Supp.1972).
   "[S]ection 9–507 has in it a specific provision for a penalty in the event of a defective disposition. The sensible thing is to apply the Code penalty and no more. . . . ."

Hogan, Pitfalls in Default Procedure, 2 U. C.C.L.J. 244, 257 (1969).

6. We also note that in the consumer goods case, § 9–507 provides for a minimum penalty of the amount of the finance charge plus 10% of the cash price. It seems highly unlikely that the U.C.C.'s drafters would have included such a provision or that the Texas legislature would have enacted it had they intended that the secured party also lose his right to recover any deficiency.

of the property sold. The jury was entitled to reject Baker's assessment as not probative of the fair value of the property at the time and place of sale. In addition to the testimony of Gresham and Baker the jury had before it an exhibit consisting of SBA's record of the auction sale prepared by the company which conducted the auction. The exhibit contained copies of advertisements placed by the auction company concerning the sale, records of expenses incurred in conducting the sale and invoices to buyers at the sale with a description of and the prices received for the property sold. On the basis of the advertisements and Gresham's testimony that about 140 to 145 registered bidders were present, "some 30 or 40 of whom must have bid on one or more lots of property," the jury could find, as it did, that the sale was "commercially reasonable."[7] And having so found, the jury was entitled to infer that the total amount received at the sale was evidentiary of the fair value of the goods.[8] This inference combined with Gresham's lower assessment of their minimum fair value is sufficient to support the conclusion that the government met its burden of proving by a preponderance of the evidence that the fair value of the goods at the time and place of sale did not exceed $31,696.98, the net amount received from the sale.[9]

■ The contention that the exhibit discussed above was not properly within the business records exception to the hearsay rule is without merit. The nature of the exhibit plus the testimony of Gresham brought it within the federal business records statute, 28 U.S.C. § 1732(a). "The Act does not require that the foundation testimony come from the one who kept the books or had supervision over them." Sabatino v. Curtis National Bank, 415 F.2d 632, 635 (CA 5, 1969).

Affirmed.

---

7. At least it was entitled to find that except as to notice to Baker and Simon the sale was "commercially reasonable," that is, that in all other respects it was conducted so as to return a fair price for the property.

8. Cf., Kolbo v. Blair, 379 S.W.2d 125 (Tex. Ct.Civ.App.1964).

9. We do not imply that a secured party may bootstrap its way to a verdict based on the price received at the foreclosure sale where that is the only evidence of the value of the goods or where the sale is less well publicized or conducted than this one. See Barker v. Horn, 245 Ark. 315, 432 S.W.2d 21 (1968) (evidence of the amount received at a private sale, without more, is not sufficient to meet the secured party's burden where no notice is given). No such case is before us.