Willie HALL, Plaintiff,

v.

SYNALLOY CORPORATION, d/b/a Augusta Chemical Company, et al., Defendants.

Roger UTLEY, Plaintiff,

v.

E. I. DU PONT DE NEMOURS & CO., INC. and Synalloy Corporation, d/b/a Augusta Chemical Company, Defendants.

James STURGIS, Plaintiff,

v.

E. I. DU PONT DE NEMOURS & CO., INC. and Synalloy Corporation, d/b/a Augusta Chemical Company, Defendants.

Alex OLIPHANT, Plaintiff,

v.

SYNALLOY CORPORATION, d/b/a Augusta Chemical Company, Defendant.

Jackie POWELL, Plaintiff,

v.

SYNALLOY CORPORATION, d/b/a Augusta Chemical Company, Defendant.

Fred BROWN, Jr., Plaintiff,

v.

E. I. DU PONT DE NEMOURS & CO., INC. and Synalloy Corporation, d/b/a Augusta Chemical Company, Defendants.

Robert WHITE, Plaintiff,

v.

SYNALLOY CORPORATION, d/b/a Augusta Chemical Company, Defendant.

Nos. CV181–149–A to CV181–149–G.

United States District Court, S. D. Georgia, Augusta Division.

April 26, 1982.

Percy J. Blount, James B. Wall, Burnside & Wall, Augusta, Ga., for plaintiffs.

William C. Humphreys, Jr., Peter Q. Bassett, Atlanta, Ga., for defendants.

Wyck A. Knox, Jr., Augusta, Ga., for E. I. Du Pont de Nemours & Co.

William C. Reed, Robert C. Norman, Augusta, Ga., for Synalloy Corp., d/b/a Augusta Chemical Co.

## ORDER

ALAIMO, Chief Judge.

The defendant Synalloy Corporation (hereinafter Synalloy) has moved this Court for an Order adjudicating the viability of its first defense to these actions. In that defense, Synalloy contends that this Court lacks jurisdiction to entertain the actions because the plaintiffs' exclusive remedies fall within the provisions of the Georgia Workers' Compensation Act dealing with occupational diseases. It appearing that a present discussion of the merits of this defense will permit this litigation to move more expeditiously, the motion is granted.

In this case, the plaintiffs' claims for damages rest upon the alleged infliction of injuries resulting from their exposure to beta-napthylamine (hereinafter BNA) while employed at the Augusta Chemical Company and then Synalloy. (Synalloy bought the assets of the former in 1967). BNA, a chemical used in the production of dye products, was manufactured by Augusta Chemical Company and Synalloy from 1955 to 1972. Prior to that time, the chemical was furnished to the Augusta Chemical Company by E. I. Du Pont de Nemours & Co., Inc., also a defendant herein. At all times pertinent to these actions, Synalloy and the Augusta Chemical Company were covered by the Georgia Workers' Compensation Act.

The controversy over the viability of Synalloy's first defense to these actions revolves around the applicability of Georgia Code § 114–803(5). That section, added to the Occupational Disease Chapter of the Georgia Workers' Compensation Act by amendment in 1971, sets out five criteria which must be met before a disease, allegedly incurred as a result of an exposure to some toxic substance, can be deemed an occupational disease. If it is determined

that the plaintiffs' injuries are caused by such an occupational disease, their sole remedies would lie with the Workers' Compensation Act and these suits would have to be dismissed. However, since the various exposures of the plaintiffs to BNA spanned from 1946 to 1972 (when Synalloy discontinued the manufacture of BNA), and since the causal connection between the BNA exposure and the injuries sustained was allegedly unknown until 1981, a question is raised whether § 114–803(5) can apply to the facts of these cases given that the statute did not take effect until 1971. Thus, there are two issues before this Court. First, whether the Georgia Workers' Compensation Law as it existed before 1971, without § 114–803(5), or as it existed after 1971, as amended by § 114–803(5), applies to the facts of the case at bar. Second, should it be found that the latter section applies, this Court must decide whether it can find as a matter of law that the plaintiffs have contracted an occupational disease as that term is defined in § 114–803(5).

For the purposes of this Order, it is helpful to divide the plaintiffs into two groups. The first group consists of those plaintiffs whose employment at Synalloy or Augusta Chemical Company terminated before 1971 —Willie Hall, James Sturgis and Alex Oliphant. The second group consists of those plaintiffs whose employment at Synalloy terminated sometime after 1971—Roger Utley, Robert White, Jackie Powell and Fred Brown, Jr.

## DISCUSSION

■ In this diversity action, the Court is bound to apply the substantive law of the state in which it sits. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Unfortunately, neither this Court nor any party was able to find a Georgia case that addressed the issues raised by Synalloy's first defense. In such a situation, the Court may look to out-of-state authority for assistance:

"But even absent guidance, we are *Erie*-bound to apply Texas law. This, of course, requires the always-dangerous undertaking of predicting what Texas courts would hold if the issue were presented squarely to them. We predict, based on reason and out-of-state authority, that they would hold that a denial of coverage waives the consent clause."

*Stephens v. State Farm Mutual Automobile Insurance Company*, 508 F.2d 1363, 1366 (5th Cir. 1975). Further, as in *United States v. Whitehouse Plastics*, 501 F.2d 692 (5th Cir. 1974) where the court construed a provision of Texas' version of the Uniform Commercial Code in conformity with the law of other jurisdictions, the fact that the law to be interpreted in the case at bar is one of general national uniformity (most states' workmen's compensation laws are similar) allows this Court to place particular weight on the holdings of these other state cases.

## I. DOES CODE § 114–803(5) APPLY?

■ Synalloy's first defense, that is that this Court is barred from taking jurisdiction over the plaintiffs' complaints because their exclusive remedies lie within the Georgia Workers' Compensation Act, rests entirely on the conclusion that any alleged injury from BNA exposure is covered by § 114–803(5), which provides:

" '[O]ccupational disease' shall include . . .

5. Other occupational diseases providing the employee or the employee's dependents first prove to the satisfaction of the State Board of Workmen's Compensation (or the Medical Board if the matter in controversy is referred to it under the provisions of section 114–819) all of the following:

(a) A direct causal connection between the conditions under which the work is performed and the disease;

(b) That the disease followed as a natural incident of exposure by reason of the employment;

(c) That the disease is not a character to which the employee may have had substantial exposure outside of the employment;

(d) That the disease is not an ordinary disease of life to which the general public is exposed;

(e) That the disease must appear to have had it [*sic*] origin in a risk connected with the employment and to have flowed from that source as a natural consequence.

For the purposes of this clause, partial loss of hearing due to noise shall not be considered an occupational disease."

Ga.Code Ann. § 114–803(5) (1973). If the section does not apply to these cases, then the alleged injuries are not covered by the Georgia Workers' Compensation Act and the plaintiffs would not be precluded from maintaining this common law tort action. *See Berkeley Granite Corp. v. Covington,* 183 Ga. 801, 190 S.E. 8 (1937).

Synalloy contends that based on the law of other jurisdiction as well as on the law of Georgia, it must be concluded that the date of disability, not the date of exposure, controls the determination of what law applies in this case. Thus, since no plaintiff was deemed disabled prior to 1971, the law in effect after 1971—specifically § 114–803(5) —applies to the facts of this case. In so concluding, Synalloy relies on Code § 114– 801 wherein the legislature has determined that the date of disablement or death shall be treated as the happening of an injury. Ga.Code Ann. § 114–801 (1973). The importance of this definition, it is argued, becomes apparent when one reads *United States Asbestos v. Hammock,* 140 Ga.App. 378, 231 S.E.2d 792 (1976) (application for cert. denied). In *Hammock,* the court found the law in effect at the time the injury occurred to be that law used in computing the amount of compensation due the claimant. Thus, it is a small step to conclude that the date of injury (disability) also controls the applicable law with respect to coverage. However, the cases from the other jurisdictions cited by Synalloy lead this Court to a contrary conclusion; a conclusion wherein a distinction between laws governing coverage and laws governing compensability will be made.

It should be noted that the plaintiffs have argued that they had a "vested right" to bring a common law tort action prior to the effective date of § 114–803(5). Thus, to permit that section to apply to them would be to impair a vested right in violation of Georgia law. *See Enger v. Erwin,* 245 Ga. 753, 267 S.E.2d 25 (1980); *Spengler v. Employers Commercial Union Ins. Co.,* 131 Ga. App. 443, 206 S.E.2d 693 (1974) (application for cert. denied). As will be seen, however, the unique nature of the workers' compensation laws effectively renders a "vested rights" approach to determining the applicable law inappropriate. Liability is determined from the existence of a contractual relationship between employer and employee in which "vested rights" under the common law are impliedly waived by both parties in return for certain benefits as hereinafter described. Accordingly, the plaintiffs' arguments on this point merits little further discussion.

As stated, there is no Georgia case law or statute that resolves the issue before this Court. Thus, it is necessary to look to the law of other jurisdictions for guidance in deciding whether § 114–803(5) should be held to apply to these plaintiffs. An examination of these state cases will reveal certain common threads of law that may be woven into general rules. Then, the relevant Georgia law will be examined to determine whether it would be reasonable to predict that a Georgia appellate court, if faced with the issue, would find in accordance with such general rules.

## A. THE LAW OF OTHER JURISDICTIONS

### 1. *Idaho*

*Frisbie v. Sunshine Mining Co.,* 93 Idaho 169, 457 P.2d 408 (1969) indicates that the Idaho courts have focused on the date of disablement as the determinative factor in deciding what law applies in a given occupational disease case. In *Frisbie,* the employee, exposed to silica dust for seven years from 1947 to 1954, contracted grade three silicosis in 1954. As a result, his employer removed him from the environ-

ment wherein the silica dust was prevalent. Nevertheless, in 1966 the employee became totally disabled from silicosis and had to end his employment. At issue in the case was whether to apply the Idaho Workmen's Compensation Act as it was in 1954 or 1966. In finding for the latter, the court noted:

> "In cases such as the present, the right to compensation does not accrue and the rights of the parties do not become fixed until the occurrence of the event, in this case appellant's disability, which gives rise to a cause of action."

*Id.*, 457 P.2d at 411. The court further noted that applying the law in effect in 1966 to an injury resulting from an exposure last endured in 1954 was not an impermissible retroactive application of the statute. The court reasoned that there was no retroactive application because the disability had not become *manifest* until the later date.

## 2. New York

The cases coming out of New York seem to indicate that that state is the only jurisdiction herein discussed that adheres to a pure "date of disability" rule for determining what law applies in a particular occupational disease case. The majority of the other jurisdictions appear to base resolution of the issue, at least in part, on the date the employee-employer relationship was terminated—a date New York has apparently deemed irrelevant. For example, in *Rogala v. John Deere Plow Co.*, 297 N.Y.S.2d 877, 31 A.D.2d 867 (1969) the plaintiff had worked for the defendant a total of thirty-six (36) years until 1954 when his employment terminated. During that time, the plaintiff was exposed to sand and iron dust which was later determined to be the cause of silicotuberculosis. Thereafter, in 1965, the plaintiff first experienced the onset of silicotuberculosis—some eleven (11) years after his final exposure to the destructive dust. Without commenting on the issue before this Court, the court in *Rogala* applied the New York Workmen's Compensation law as amended effective July 1, 1965. Thus, it was apparently found that the date of disablement controlled the determination of the applicable law.

Also, in an earlier case, a New York court found that the date of disablement remains the controlling factor in deciding what law applies even where the employer-employee relationship ends before the effective date of the statute or amendment. *See McCann v. Walsh Construction Co.*, 282 App.Div. 444, 123 N.Y.S.2d 509 (1953), *aff'd*, 306 N.Y. 904, 119 N.E.2d 596 (Ct.App.1954) (*cited in Biglioli v. Durotest Corp., infra*). *Rogala* and *McCann*, however, appear to represent the minority viewpoint. *See* section I.B. of this Order, *infra*.

## 3. Indiana

*Hirst v. Chevrolet Muncie Division of General Motors Corp.*, 110 Ind.App. 22, 33 N.E.2d 773 (1941) indicates that Indiana also looks to the date of disablement as determinative of the law applicable to a plaintiff suffering from an occupational disease:

> " 'There is a difference between having a disease and being disabled thereby.' . . . Since the act provides for compensation for disablement and since the appellant did not become disabled within the meaning of the act until almost a year after the effective date thereof, he clearly comes within the purview of the act and the Industrial Board has jurisdiction of the cause."

*Id.*, 33 N.E.2d at 775. It should be borne in mind, however, that in *Hirst* the claimant was exposed to the cause of the disease both before and after the effective date of the act and that he therefore remained a party to the employer-employee relationship subsequent to the effective date of the act.

## 4. Pennsylvania

In a particularly incisive opinion, the court in *McIntyre v. E. J. Lavino & Co.*, 344 Pa. 163, 25 A.2d 163 (1942) undertook an in-depth analysis of the problems inherent in affixing the applicable law in occupational disease cases due to the length of time between the exposure to the harmful substance and the manifestation of the illness. In *McIntyre*, where the employee was ex-

posed to the injury-causing substance prior to the effective date of the statute but continued to be employed thereafter, it was recognized that for ease of application, the date of disability must become the determining factor in deciding what law applies; but it was also noted that the court must guard against any prohibited retroactive operation of the statute. The following excerpt from the court's opinion points out the "time dimension" difficulties with occupational diseases:

"Occupational diseases are, from a legal standpoint, peculiar in this—that they arise, not from an accident or event happening at a precise moment, but from a day by day exposure to unhealthful conditions over an extended period; the exact time of their origin is necessarily obscure and their insidious progress is not revealed until, frequently after a long interval, the disability which they create manifests itself. In the case of accidents compensable under the Workmen's Compensation Act, . . . the accident and the damage resulting therefrom, the cause and the effect, are usually determinable immediately and they are practically simultaneous. But, because in disability arising from an occupational disease both cause and effect are protracted and a long interval is apt to elapse between the exposure and the disability, it becomes necessary to fix a point of time at which the injury which is the subject of compensation shall be deemed to arise and the right to compensation accrue. Accordingly, the . . . Act . . . provides . . . that 'The date when the disability occurs from occupational disease shall be deemed to be the date of injury or accident.' Thus it makes the occurrence of the disability the event which constitutes the compensable injury, although the disability is necessarily preceded by an exposure and an occupational disease of which it is the culmination."

*Id.*, 25 A.2d at 164–65.

Of particular significance to the issue in this case is the way the *McIntyre* court handled the employer's claim that to allow compensation amounted to a retroactive application of the law in violation of specific statutory proscriptions.

"When employer and employe [sic] accept compensation legislation their relation in regard to it becomes *contractual* and their rights are to be determined under its provisions. . . . *Since, therefore, McIntyre was in the employ of defendant on the effective date of the Occupational Disease Compensation Act,* and the parties did not, then or thereafter, express their intention not to be bound by it, they voluntarily submitted themselves to its terms, . . . so that defendant assumed thereby the duty of paying compensation to McIntyre if disability from occupational disease should subsequently reveal itself. *Had McIntyre's employment ceased before January 1, 1938, a different question would be presented."*

*Id.*, 25 A.2d at 166 (emphasis added). Thus, the court used a contractual theory to circumvent the prohibition against the retroactive operation of statutes so as to imply an acceptance by the parties to the employer-employee relationship of the terms of the new legislation into the contract of employment through the tacit continuation of the employment. The court did not address the issue whether a prior termination of the employment relationship amounted to a "freezing" of the rights of the parties at that point in time. *But see Cropley v. Alaska Juneau Gold Mining Co.,* 131 F.Supp. 34, 15 Alaska 531 (D.Alaska 1955) discussed *infra. Compare McCann v. Walsh Construction Co., supra.*

### 5. *New Jersey*

New Jersey, as did Pennsylvania, emphasized the contractual nature of the relationship between the employer and the employee under the Workmen's Compensation Laws as a significant factor in determining the applicable law. In *Biglioli v. Durotest Corp.,* 44 N.J.Super. 93, 129 A.2d 727 (1957), the employee was last exposed to beryllium in October of 1949 and contracted berylliosis in July of 1951. Meanwhile, effective January 1, 1950, New Jersey extended the coverage of its Workmen's Compensation

Act to include all occupational diseases. In finding that *Biglioli*'s common law tort action was barred because he had an exclusive remedy under the act, the court focused on the fact that he had continued to be employed by Durotest subsequent to the effective date of the amendment:

> "*McIntyre v. E. J. Lavino & Co.*, 344 Pa. 163, 25 A.2d 163 (Sup.Ct.1942) sustains the point and is practically on all fours with the present case. *McIntyre*, under one hypothesis, relied on the fact that there (as is the case here) the plaintiff continued in the defendant's employment until after the effective date of the pertinent amendment and that, by continuing therein, the employer and employee accepted the new legislation *contractually*. We need not pass on the question presented by a case where the employment has ceased prior to that date."

*Id.*, 129 A.2d at 731 (emphasis added). The reliance by the court in *Biglioli* on the *McIntyre* decision supports the conclusion of this Court that the contractual approach to the issue of what law applies represents the majority viewpoint.

Judge Francis, concurring in *Biglioli*, expanded on the notion that it is in part the law in existence at the time the contract of employment ceases that determines what law applies in an occupational disease case.

> "As a consequence of these cases and the legislative policy implications of the sections of the Workmen's Compensation Act to which reference has been made, I believe our present rule for application to the case of a plaintiff who continued in the employment after January 1, 1950 may be said to be this: the common law cause of action is barred if the occupational disease reached the stage of maturation where it became manifest and the employee knew or should have known of its relation to the employment prior to January 1, 1950, and no action was brought within two years after the date of acquisition of such actual or constructive knowledge. But where the employee continues in the employment after January 1, 1950, even though the disease became manifest prior thereto, if the

knowledge of its relation to the employment did not accrue until subsequent to that date, the Workmen's Compensation Act applies. This result comes about because, as Judge Clapp's opinion indicates, continuance in the employment after January 1, 1950, makes the occupational disease sections of the act part of the contract of employment and so controlling ... As my colleagues said, we need not consider the problem raised by a case where the employment ceased prior to January 1, 1950."

*Id.*, 129 A.2d at 737 (Francis, J., concurring).

### 6. *Alaska*

Alaska not only uses the contractual approach to determine what law applies in a given occupational disease case, but also expands on that approach and incorporates the importance of the date of disability with respect to the *amount* of compensation owing to a claimant once coverage is found to exist.

> "A study of authorities that have dealt with this and related problems suggests only one practical hypothesis—*that the rights of the employee are defined by the statute in force during the employer-employee relationship.* In other words, whether the employee has a claim cognizable at common law or a silicosis claim under the Compensation Act depends on the provisions of the Compensation Act in effect during the period of ᴄmployment, *but the quantitative extent of the remedy is not determinable until disability ensues.* Thus no right to compensation accrues if there is no occupational disease coverage during employment."

*Cropley v. Alaska Juneau Gold Mining Co.*, 131 F.Supp. 34, 35–36, 15 Alaska 531 (D.Alaska 1955) (emphasis added). Thus, under the *Cropley* analysis, the existence of the employment or contractual relationship *controls the determination of the applicable law with respect to coverage* under the workmen's compensation act while the date of disability controls the determination of the applicable law with respect to the "quantitative extent of the remedy," that is, the amount of compensation.

## B. THE SYNTHESIS

A thorough examination of the above cases has revealed to this Court certain general rules that can be applied to determine the time frame of the applicable law in workmen's compensation cases. Admittedly, most of the concepts are drawn from Alaska, New Jersey and Pennsylvania where the contractual approach to the problem is advocated. However, if one examines the rules and applies them to the facts of the cases from Idaho and Indiana, it will be discovered that the results reached under the rules and the results reached in the cases are consistent. Only the cases from New York are irreconcilable with the rules expressed below. Yet, it seems that for every majority rule there must be a minority rule. This Court accepts what it perceives to be the majority rule.

Workmen's compensation acts are unique bodies of law designed to benefit both parties in the employment relationship. The employee, in return for the right to inexpensive and efficient settlement of his claims for injuries occurring in the workplace, regardless of fault, contracts away his right to bring a common law tort action against the employer. The employer, in return for that waiver of the right of the employee to bring a suit at common law, has agreed to insure against any injuries or disabilities arising from the workplace; again, regardless of fault.

The laws enacted to bring about these objectives have worked well where the accident and the injury are simultaneous. However, where the injury is not manifested until years after the last exposure to the harmful substance, the laws are deficient. The courts that have been confronted with the issue of what law to apply—that in effect at the time of the exposure, the disablement or when the employment relationship ended—have struggled to fill this void.

In determining the time frame of the applicable law, the courts have generally held that it is the date of "injury" that controls. Since most occupational disease statutes, including Georgia, define "injury"

as occurring on the date of disability, it follows that the cause of action does not accrue, and therefore the law is not fixed, until an employee becomes disabled. But, such a rule runs counter to the statutory prohibition against the retrospective application of the laws since it becomes possible, for example, to apply a 1971 statute to an injury resulting from an exposure last endured in 1962. *See* Ga.Code Ann. § 102–104 (1968). Thus, it was necessary for the courts to reconcile the use of the date of disability as determinative of the applicable law with the prohibition against the retrospective application of statutes.

This reconciliation was accomplished by focusing on the contractual nature of the employer-employee relationship under the workmen's compensation acts. The courts merely implied from the continuation of that relationship subsequent to the effective date of the amendment, the acceptance of said amendment as part of the employment contract. Of course, where the employment relationship terminated prior to the effective date of the amendment, a different result would be warranted. Along these lines, certain general rules can be promulgated:

1. Where exposure occurs both before and after the effective date of the amendment, even where the injury allegedly caused by the exposure was apparent before the amendment although the causal connection between the injury and exposure was not, the amendment applies. In this situation, the employment relationship is necessarily still intact after the effective date of the amendment.

2. Where the last exposure occurs before but not after the effective date of the amendment and the injury allegedly caused by the exposure was not manifest until after, if the employment relationship remains intact after the effective date of the amendment, the amendment applies (becoming a part of the contractual relationship).

3. Where the last exposure occurs before but not after the effective date of the amendment and the injury allegedly caused by the exposure was not manifest until after, if the employment relationship ceases before the effective date of the amendment, the amendment does not apply (not becoming a part of the contractual relationship).

One further rule that can be gleaned from the above cases concerns the distinction between compensability and coverage. While coverage is dependent on the law in effect during the employment relationship, the amount of compensation appears to be dependent on the law in effect at the time of disability. The distinction is important because the amount of compensation, being remedial in nature, can have a retrospective application. *See* Ga.Code Ann. § 102–104 (1968). Thus, such a rule of law, in contrast to a similar rule with respect to coverage, does not violate the prohibition against the retrospective application of the laws. Accordingly, the applicable law with respect to coverage can differ from the applicable law with respect to compensation.

### C. GEORGIA

The similarities between the Workers' Compensation Law of Georgia and that of the states previously discussed leads this Court to conclude that the general rules enumerated above apply with equal force in Georgia. As with the other states, the Georgia Workers' Compensation Law is intended to have a liberal but fair application. "That 'law' is to 'be construed reasonably and liberally with a view of applying the beneficent provisions of the statutes so as to effectuate its purposes, and to extend them to every class of workman and employee that can fairly be brought within the provisions of the act.'" *Gulf American Fire & Casualty Co. v. Taylor*, 150 Ga.App. 179, 180, 257 S.E.2d 44 (1979) (citations omitted). *See also Brannan v. Georgia Bureau of Investigation*, 146 Ga.App. 524, 525, 246 S.E.2d 511 (1978). Accordingly, the act should be given as broad an application as is legally permissible.

Again, as with the other jurisdictions cited, the main impediment to an across-the-board application of the 1971 amendment of § 114–803 to all cases of occupational disease is the Georgia statute prohibiting the retrospective application of the laws. This section provides:

> Laws prescribe only for the future; they cannot impair the obligation of contracts, nor, usually, have a retrospective operation. Laws looking only to the remedy or mode of trial may apply to contracts, rights, and offenses entered into or accrued or committed prior to their passage; but in every case a reasonable time subsequent to the passage of the statute should be allowed for the citizen to enforce his contract, or protect his right. . . .

Ga.Code Ann. § 102–104 (1968). Further, since the Georgia courts have found that the relationship between an employer and an employee under the workers' compensation act "aris[es] out of a contract created by law and not out of any theory of tort," *Williams Brothers Lumber Co. v. Meisel*, 85 Ga.App. 72, 74, 68 S.E.2d 384 (1951), it is not unreasonable to predict that the general rules enunciated in the preceding section of this Order, based as they are on a contractual approach, would be found to be "good law" were this a Georgia appellate court.

Thus, a Georgia Workers' Compensation law that takes effect after an employment relationship is terminated should not be applied to determine the liability of a party to that relationship since such would constitute an impermissible retrospective application of the law. Accordingly, in the case at bar, § 114–803(5) does not apply to those plaintiffs who ceased working for Synalloy prior to 1971. It also follows that § 114–803(5) does have an effect on the litigation between Synalloy and those plaintiffs who continued working for it after 1971. These latter plaintiffs are held to have embraced that law as part of their contractual relationship with Synalloy and, thus, have waived any "vested rights" they may have acquired before that time.

Nevertheless, Synalloy would have this Court find that the 1971 amendment to § 114–803(5) applies to all of the plaintiffs in this case. Such a finding, however, is not mandated by the cases Synalloy cites as supporting its contention. While it is true that the time of injury is the date at which the employee becomes disabled, Ga.Code Ann. §§ 114–801 (1973), and that two Georgia appellate courts have found that the applicable law is that law in effect at the time the injury occurred, *United States Asbestos v. Hammock*, 140 Ga.App. 378, 381, 231 S.E.2d 792 (1976) (application for cert. denied); *London Guarantee and Accident Co. v. Pitman*, 69 Ga.App. 146, 25 S.E.2d 60 (1943), these cases are not inconsistent with the rules established in the preceding section. Both *Hammock* and *Pitman* emphasize that the *amount of compensation* shall be determined by the law in effect when the disability is manifested. As stated, since the amount of compensation goes only to the extent of the remedy, laws governing compensation may be given retrospective effect. The issue in this case, however, is coverage; a question for which a law may not be given retrospective effect. Thus, *Hammock* and *Pitman* are not inconsistent with the general rules announced above.

D. LOOSE ENDS

1. *Georgia Code § 114–808*

The plaintiffs argue that Code § 114–808 evinces a legislative intent that the Occupational Disease Chapter of the Georgia Workers' Compensation Act should not apply where exposure ceased prior to the effective date of the pertinent statute or amendment. This section provides:

This Chapter shall not apply to cases of occupational disease in which the last injurious exposure to the hazards of such disease occurred before the Chapter shall have taken effect.

Ga.Code Ann. § 114–808 (1973). Although the argument would aid only those plaintiffs whose employment terminated before the effective date of § 114–803(5), for whom it has already been concluded that the section does not apply, this Court feels that a discussion of the issue is appropriate, given the likely possibility it will become a viable argument in a subsequent case.

In two cases following the *original* enactment of the Occupational Disease Chapter in 1946, § 114–808 was given its intended effect and suits based on exposures prior to 1946 were dismissed. *See Ocean Accident & Guaranty Corp. v. Harris*, 87 Ga.App. 399, 74 S.E.2d 12 (1953); *American Mutual Liability Ins. Co. v. Ellison*, 80 Ga.App. 62, 55 S.E.2d 258 (1949) (application for cert. denied). Section 114–808, however, has never been held to apply to an amendment to the Chapter.

In resolving the issue before this Court, it is particularly helpful to consider how another state court has decided the issue. In *Frisbie v. Sunshine Mining Co.*, 93 Idaho 169, 457 P.2d 408 (1969), the court rejected an argument virtually identical to that advanced by the plaintiffs herein:

If the legislature intended that amendments of the act apply only to cases in which injurious exposure occurred after the date of the amendments it could have so stated in I.C. § 72–1206 itself [the equivalent of Georgia Code Section 114–808], or it could, as it has done in the past, provided in the amendment itself that it applies only to those cases in which the injurious exposure occurs after the effective date of the amendment.

*Id.*, 457 P.2d at 412. This Court agrees with the result reached in *Frisbie* and accordingly concludes that § 114–808 does not evince a legislative intent that subsequent amendments to the Occupational Disease Chapter should apply only where the last exposure occurs after the effective date of the amendment. Rather, it is predicted that the Georgia courts would apply the aforementioned general rules.

2. *King v. Seitzingers, Inc.*

Synalloy argues that the recent Georgia case, *King v. Seitzingers, Inc.*, 160 Ga.App. 318, 287 S.E.2d 252 (1981), demands a finding that the applicable law is the law in effect in 1981. Specifically, Synalloy points to language in *King* holding that a cause of

action does not accrue until, among other factors, "the plaintiff discovers the causal relationship between his harm and the defendant's product." *Id.*, at 319, 287 S.E.2d 252. Since the plaintiffs herein allegedly did not discover that the BNA exposure caused their injuries until 1981, the 1971 amendment would apply.

As the plaintiffs assert, however, the *King* case was merely referring to the accrual of a cause of action for purposes of the statute of limitations, not for the purpose of determining what law applies.

> Appellant's injury is a continuing tort and Georgia courts have clearly held that in a continuing tort a cause of action does not accrue *so as to cause the statute of limitations to run* until a plaintiff discovers or with reasonable diligence should have discovered that he was injured.
>
>    \*    \*    \*    \*    \*    \*
>
> However, Georgia courts have not clearly addressed the question arising in this case. That is: where the injury is known, but the cause of the injury is not known, has a cause of action accrued *so as to start the statute of limitations running?*

*Id.*, at 318–19, 287 S.E.2d 252 (emphasis added). Thus, *King* is not dispositive of the issue before this Court.

### 3. Coverage v. Compensability

◼ In determining whether a Workers' Compensation Act provides an employee with an exclusive remedy for workplace injuries, thereby precluding a common law cause of action, a court must only ascertain whether the situation is covered by the Act; compensability is irrelevant. Nowhere was the operation of this rule more apparent than in *Nowell v. Stone Mountain Scenic Railroad*, 150 Ga.App. 325, 257 S.E.2d 344 (1979) where a badly burned girl was denied the right to bring a common law suit despite her inability to recover under the Act for disfiguring but not disabling injuries.

> Georgia is in the minority of states which do not allow compensation for nondisability producing disfigurement under the Workers' Compensation Act ... [T]his

common law suit by a young girl against her employer for burns to her neck and chest caused by the firing of a loaded gun in a staged entertainment, but which resulted in no physical or economic disability, is not maintainable and the trial court properly granted the defendant's motion for summary judgment.

*Id.*, at 325–26, 257 S.E.2d 344. Any perceived harshness in the compensability provisions of the Workers' Compensation Act should be corrected, if at all, by the legislature and not by the courts. *See Blue Bell Globe Manufacturing Co. v. Baird*, 64 Ga. App. 347, 348–49, 13 S.E.2d 105 (1941).

### 4. Equitable Estoppel

◼ Plaintiffs' contention that the doctrine of equitable estoppel should preclude Synalloy from raising its first defense to this action because it allegedly acted in bad faith when it failed to inform its workers of the hazardous effects of BNA is without merit. The doctrine possibly would apply to estop Synalloy from raising the defense where it had previously succeeded in defeating a plaintiff's workers' compensation claim by asserting that the plaintiff was not covered under the Act.

### 5. Allegations of Negligence, Willful or Intentional Tort and Fraud

Synalloy argued in its original brief that allegations of negligence, will.'ul or intentional tort and fraud do not remove the plaintiffs' claims from the exclusive remedy provisions of the Georgia Workers' Compensation Act. This argument is not controverted. These allegations are made to support the plaintiffs' contention that the statute of limitations on their "vested rights" was tolled until the alleged discovery of the cause and effect relationship between the BNA exposure and the injuries sustained.

### E. CONCLUSION

A review of workmens' compensation cases from other jurisdictions that considered the issue before this Court leads to the conclusion that certain general rules can be formulated on the applicability of

statutes or amendments in the context of occupational disease cases where the exposure and injury are years apart. These rules, based on the interaction between the concept that the employer and employee are parties to a contractual relationship under workers' compensation laws and the prohibition against the retrospective operation of statutes, can be reasonably applied to a Georgia case since the law of Georgia recognizes these identical principles.

In applying the rules to the facts of this case, it is apparent that § 114–803(5) does not apply to those plaintiffs whose employment at Synalloy terminated before the effective date of the amendment. Accordingly, the first defense does not, as a matter of law, bar the maintenance of a common law cause of action by Willie Hall, James Sturgis and Alex Oliphant. It is equally apparent that § 114–803(5) is a part of the set of applicable laws that will determine the liability of those plaintiffs whose employment with Synalloy was not terminated until after the effective date of the amendment. Accordingly, the first defense may bar the bringing of a common law action by Roger Utley, Jackie Powell, Robert White and Fred Brown, Jr. It remains to be determined whether § 114–803(5) bars their actions as a matter of law.

## II. DOES § 114–803(5) CONCLUSIVELY BAR THIS ACTION?

■ For this Court to find that § 114–803(5) bars the assertion of a common law cause of action, it must find *as a matter of law* that injuries resulting from exposure to BNA are included in that section as an occupational disease. Thus, it must be concluded that BNA exposure meets these five criteria:

"(a) A direct causal connection between the conditions under which the work is performed and the disease;

(b) That the disease followed as a natural incident of exposure by reason of employment;

(c) That the disease is not of a character to which the employer may have had substantial exposure outside of the employment;

(d) That the disease is not an ordinary disease of life to which the general public is exposed;

(e) That the disease must appear to have had it [sic] origin in a risk connected with the employment and to have flowed from that source as a natural consequence."

Ga.Code Ann. § 114–803(5) (1973).

Plaintiffs offer three arguments in support of their position that this Court cannot conclude as a matter of law that the BNA exposure herein amounts to an occupational disease as that term is defined in § 114–803(5). The first argument rests on a technical reading of the interaction between Georgia Code §§ 114–811 and 114–803. Section 114–811, the "exclusivity of remedy" provision of the Georgia Workers' Compensation laws, provides in pertinent part that "[a]n employee who suffers disablement or death from any disease or injury not listed in § 114–803, shall not be deprived of any common law rights under existing laws." Ga.Code Ann. § 114–811 (1973). Thus, it is argued, since BNA exposure is not "listed" under § 114–803, but rather is potentially included in that section under the general or "catch-all" provision of § 114–803, a person injured by BNA exposure retains his common law rights. It is the opinion of this Court, however, that the plaintiffs are advancing ar unduly narrow view of the scope of coverage under the Act, and that the proper view is to find that any disease that falls within the confines of § 114–803(5) is a "listed" disease for the purposes of the exclusivity of remedy section. The Court's position on this issue is consistent with the policy of the Georgia courts to liberally construe the workers' compensation laws in order to enhance the scope of their coverage. *See Gulf American Fire & Casualty Co. v. Taylor, supra; Brannan v. Georgia Bureau of Investigation, supra.*

Plaintiffs' second argument in support of their position is also technical in nature. There it is argued that subsection 5 of § 114–803 was apparently designed to cover

"occupational diseases" in the traditional sense only and not injuries resulting from exposure to a specific toxic substance, such as exposure to BNA, because these substances are poisons and poisons are listed in subsection 1. Should subsection 5 be found to include injuries from poisoning, the list in subsection 1 becomes superfluous. The plaintiffs offer no authority for their contentions, and it is again the opinion of this Court that they are advancing an unnecessarily restrictive interpretation of the scope of the coverage under the Occupational Disease Chapter of the Georgia Workers' Compensation Act. Had subsections 1 and 5 been enacted at the same time, the argument would be more persuasive. However, subsection 5 was enacted in 1971—some 25 years after subsection 1—and was obviously intended to broaden the overall coverage of the Occupational Disease Chapter without the necessity of listing every poison and dangerous substance. Accordingly, the argument is without merit.

Finally, the plaintiffs vigorously contend that this Court cannot now find as a matter of law that injuries from BNA exposure are the result of an occupational disease as that term is defined in § 114–803(5). Rather, the issue is one best decided by the trier of fact at the conclusion of the evidence. Synalloy counters that this Court can find that the five criteria of § 114–803(5) are met merely through the allegations of the complaint. In support of its position, Synalloy refers this Court to *Burbank v. Mutual of Omaha Ins. Co.*, 484 F.Supp. 693 (N.D.Ga. 1979) wherein Judge Moye granted a summary judgment (and thereby dismissed an employee's claim) based in part on the exclusivity provision of the Georgia Workers' Compensation Act through the operation of § 114–803(5). In *Burbank*, the court was able to rely on the allegations of the complaint to find that the prerequisites of § 114–803(5) had been met. However, an examination of the complaint in the case at bar reveals that a similar finding cannot be made. The plaintiffs only alleged that they were unnecessarily negligently or willfully exposed to BNA while employed by Synalloy. If exposure and employment were the only criteria for defining an occupational disease, Synalloy's position would be supportable. The section, however, also requires that the disease not be of a character to which the employee may have had substantial exposure outside of the employment and that it not be an ordinary disease of life to which the general public is exposed. In fact, Synalloy has alleged that the plaintiffs' injuries in this case could have resulted from other causes unrelated to the work environment. Thus, this Court is unable to conclude as a matter of law that the plaintiffs contracted an occupational disease while employed at Synalloy. Accordingly, the issue remains a factual question more properly decided by the fact-finder upon a trial on the merits.

## III. CONCLUSION

It is the conclusion of this Court that Synalloy's first defense to this action that the plaintiffs are barred from bringing a cause of action due to the exclusivity provisions of the Georgia Workers' Compensation Act, remains viable only in part. As to the group of plaintiffs whose employment at Synalloy terminated prior to the effective date of § 114–803(5)—Willie Hall, James Sturgis and Alex Oliphant—the defense is insufficient as a matter of law and does not bar the bringing of this common law cause of action. As to the group of plaintiffs whose employment with Synalloy did not terminate prior to the effective date of § 114–803(5)—Roger Utley, Robert White, Jackie Powell and Fred Brown, Jr.— the defense remains viable subject to proof that exposure to BNA falls within the definition of an occupational disease under § 114–803(5). While this disparate treatment of the two groups of plaintiffs may on its face appear inconsistent, it should be remembered that "the right of the first person to pursue the new remedy and the right of the last to pursue the old remedy are equal in the eyes of the law." *Biglioli v. Durotest Corp.*, 44 N.J.Super. 93, 129 A.2d 727, 737 (1957) (Francis, J., concurring).

It is also the conclusion of this Court that this Order "involves a controlling question of law as to which there is substantial ground for difference of opinion," given the dearth of Georgia case law on point, "and that an immediate appeal from the order may materially advance the ultimate determination of the litigation." 28 U.S.C. § 1292(b). Accordingly, it is hereby ordered that either party may file an interlocutory appeal from these findings in the manner provided by the Rules of Procedure.